UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Misty Kay Myers,

                 Plaintiff,                              Court File No. 14-cv-473 (JRT/LIB)

     v.

                                             **REPORT AND RECOMMENDATION**

Aitkin County, et al.

                 Defendants.

This matter came before the undersigned United States Magistrate Judge pursuant to an order of referral, [Docket No. 163], made in accordance with the provisions of 28 U.S.C. § 636(b)(1)(B), and upon Plaintiff's Motion for Attorney's Fees, [Docket No. 143].

For the reasons set forth below, the Court recommends that Plaintiff's Motion for Attorney's Fees, [Docket No. 143], be **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND  AND STATEMENT OF FACTS

The Driver and Vehicle Services Division ("DVS") of the Minnesota Department of Public Safety ("DPS") maintains a database that contains motor vehicle records of all Minnesota drivers. Myers v. Aitkin Cty., No. 14-cv-473 (JRT/LIB), 2014 WL 7399182, *1 (Dec. 29, 2014). In February 2014, Misty Kay Myers ("Plaintiff") filed suit alleging that multiple defendants, including Defendant City of Waite Park, violated the DPPA, her Fourth and Fifteenth Amendment rights, and her Minnesota common law privacy rights by illegally accessing or allowing the illegal access of her private driver's license information 84 times. (Compl., [Docket No. 1]). Plaintiff later, more specifically, identified additional defendants to include Jonathan

Collins, an employee of Defendant Waite Park's Police Department. (Amend. Compl., [Docket No. 68], 11).

A number of the defendants filed Motions to Dismiss, which were the subject of a motions hearing on October 1, 2014. ([Docket No. 49]); Myers, 2014 WL 7399182, at *5. On December 29, 2014, the district court issued a written order, dismissing as time-barred Plaintiff's DPPA claims which were based on allegedly illegal accesses of her information prior to February 20, 2010. Id. at *10. The district court also dismissed the claims Plaintiff had brought pursuant to 42 U.S.C. § 1983, holding "that the DPPA provides a 'comprehensive enforcement scheme' that precludes enforcement via Section 1983." Id. at *18.

The district court next granted the motions to dismiss Plaintiff's claims of violation of her constitutional right to privacy, concluding that the information alleged to have been illegally obtained "does not constitute the kind of intimate or extremely personal information that gives rise to constitutional protection." Id. at *19-20. Similarly, the district court dismissed Plaintiff's common-law invasion of privacy through intrusion upon seclusion claims. Id. at *20-21. The court dismissed Plaintiff's DPPA and § 1983 claims against the current and former Commissioners of the Minnesota Department of Public Safety ("DPS") because Plaintiff did not address a prior decision in which the court had dismissed similar claims against the same two Commissioners. Id. at 21. Finally, the district court concluded that severance was not appropriate at that point in the proceedings. Id. at *22.

Regarding "Defendant Cities of Baxter, Chaska, Crosby, Nisswa, Pequot Lakes, and Waite Park's Motion to Dismiss or Sever" specifically, the district court held:

> a. To the extent the motion seeks to dismiss DPPA claims based on DVS Database look-ups that took place on or after February 20, 2010 (three in total, including one by the Waite Park, Minnesota, Police Department and two others by

the Little Falls, Minnesota, Deputy Registrar, which did not join the cities' motion
in this case), the motion is **DENIED.**
b. To the extent the motion seeks severance for those DPPA claims not dismissed,
the motion is **DENIED.**
c. In all other respects, the motion is **GRANTED.**

Id. at *22.

In July 2016, after a settlement conference, Plaintiff reached a partial settlement with

Defendant "Cities of Baxter, Chaska, Crosby, Isanti, Nisswa, Pequot Lakes, and Waite Park,

their agents and current and former employees." (Minute Entry, [Docket No. 125]; Plf. Motion

for Atty Fees, [Docket No. 143], 3; Angolkar Aff., [Docket No. 165], 8-9). In exchange for

$4,500.00, Plaintiff released these defendants from past or present actions arising out of the

incidents which formed the basis for this lawsuit. The release explicitly provided:

> [A]s the prevailing party, the releasing party counsel . . . may petition the Court
> by August 15, 2016, for reasonable attorney's fees and costs pursuant to 18
> U.S.C. § 2724(b)(3), the parties released may file and serve objections to the
> petition within fourteen days as provided under Local Rule 54.3, and the releasing
> party  may serve any additional response within seven days to the objections.

(Angolkar Aff., [Docket No. 165], 8).

On August 15, 2016, Plaintiff filed the present Motion for Attorney's Fees, [Docket No.

143], and a Memorandum and affidavits in support thereof. ([Docket Nos. 145-47]). She requests

"attorney's fees in the amount of $32,835.00 and costs in the amount of $3,774.89 related solely

to her prosecution of her claims against Defendant Waite Park." (Plf. Mem. in Support, [Docket

No. 145], 1). After the district court referred the Motion for Attorney's Fees to this Court by an

order of referral, [Docket No. 163], Defendants Waite Park, Jonathan Collins, and Gene Hill

("Defendants") filed a joint Memorandum in Opposition to the Motion for Attorney's Fees,

[Docket No. 164], and a supporting affidavit in opposition, [Docket No. 165].[1] Plaintiff filed a Reply to the Response and two additional supporting affidavits. ([Docket Nos. 170-72]).

On October 11, 2016, this Court held a hearing on the Motion, after which it took the Motion under advisement. ([Docket No. 176]).

## II.   PLAINTIFF'S MOTION FOR COSTS AND ATTORNEY'S FEES [Docket No. 143]

### A. Standard of Review

Under the DPPA, "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court." 18 U.S.C. § 2724(a). The remedies available include "reasonable attorneys' fees and other litigation costs reasonably incurred." 18 U.S.C. § 2724(b)(3). Courts determine the amount of a fee award on the facts of each case. See, Hensley v. Eckerhart, 461 U.S. 424, 429 (1983), superseded in part on other grounds by the Prison Litigation Reform Act.

Although the award of attorney's fees in a DPPA case has not been extensively analyzed by courts within the Eighth Circuit or by the Eighth Circuit itself, those courts which have reviewed requests for such fees begin with the lodestar calculation which multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. See, Rasmusson v. City of Bloomington, et al., No. 12-cv-632 (SRN/JSM), 2013 WL 3353931, *2 (D. Minn. July 3, 2013); see also, Marez v. Saint-Gobain Containers, Inc., 688 F.3d 958, 965 (8th Cir. 2012)

---

[1] The propriety of Defendant Hill objecting to Plaintiff's Motion for fees and costs related to her claims against Defendants Waite Park and Collins is addressed later in this Report and Recommendation. Defendant Hill was not an employee or agent of Defendant Waite Park; Defendant Hill was the Isanti Police Chief. (Mem. in Opp., [Docket No. 164], 5). Defendants appear to argue that Defendant Hill is properly included because he participated in an earlier settlement offer, which Plaintiff rejected, and Defendants assert the rejection as a basis for the Court to reduce the award of attorney fees. (See Id. at 10-11).

(stating that the lodestar method is appropriate when a statute provides for awarding reasonable attorney's fees to a prevailing plaintiff).

"'When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates' and [have] 'broad discretion' in awarding attorneys' fees." Trickey v. Kaman Indus. Techs. Corp., 705 F.3d 788, 807 (8th Cir. 2013) (citations omitted). After the lodestar amount is determined,

> other factors "may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" "This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." A plaintiff can be compensated for work on unsuccessful claims if they are sufficiently related to the successful claim because "they 'involve a common core of facts' or 'are based on related legal theories.'"

Marez, 688 F.3d at 965 (quoting Hensley and Emery v. Hunt, 272 F.3d 1042 (8th Cir. 2001)).

### B. Attorney's Fees

#### i. Reasonableness of the Hourly Rates

To determine whether proposed hourly rates are reasonable, this Court looks at the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." See, Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). In addition, the Court may draw on its own experience and knowledge of the market rates. See, Trickey, 705 F.3d at 807.

According to an affidavit from Plaintiff's counsel, her attorneys involved in the present case were Larry Fett, who had over 35 years of legal experience and billed at $450 per hour; Jonathan Strauss and Sonia Miller-Van Oort, who each had 19 years of legal experience and billed at $400 per hour; Robin Wolpert, who had 15 years of legal experience and billed at $400 per hour; and Kenn Fukuda, who had 4 years of legal experience and billed at $225. (Miller-Van

Oort Aff., [Docket No. 147], 5-6). In addition, paralegals, identified as P.A.R. and K.L.T., worked on the case and billed at $100 per hour. (<u>Id.</u> at 6).

Plaintiff submitted to the Court an expert declaration from Marshall Tanick who stated "with a reasonable degree of professional certainty, that the rates charged and the amount of work performed, which collectively consist of the lodestar, are reasonable and well within the range of fees for such work for similarly situated attorneys." (Tanick Dec., [Docket. 146], 3). Tanick's declaration details his extensive experience with the DPPA and the determination of reasonable attorney's fees. (<u>Id.</u> at 1-5). Defendants assert in a footnote that they "do not address Plaintiff's counsel's proposed hourly rates, other than noting they are nearly twice the rates charged by Defendants' litigation attorneys." (Def. Mem. in Opp., [Docket No. 164], 6 n.3).[2]

The stated hourly rates for the members of Plaintiff's legal team are reasonable for the Minnesota legal community. In addition, at least one other court in this District has found legal rates ranging from $100 to $400 per hour reasonable in a case involving claims brought under the DPPA, common law, and 42 U.S.C. § 1983. <u>See</u>, <u>Rasmusson</u>, 2013 WL 3353931, at *2-3. Therefore, the Court finds that the rates in this case are reasonable.

## ii.  **Reasonableness of the Number of Hours Expended**

Next, the Court turns to whether the number of hours Plaintiff claims were expended is reasonable. Defendants challenge the reasonableness of the number of hours in two ways. First, Defendants disagree with the manner in which Plaintiff calculates Defendants' responsibility for fees incurred on work that benefitted multiple defendants, not just Defendants Collins and Waite Park. Second, Defendants challenge certain entries individually. In an effort to simplify the complex calculations involved in this case, the Court will address the arguments in reverse order.

---

[2] The Court, drawing on its own experience and knowledge of the local legal market, does not find this difference in hourly rates to be material. The rates received by insurance defense bar members are determined by their own market forces, and hourly rates of around $200 an hour are fairly typical for members of the civil defense bar.

### a.  Specific Billing Entries

#### 1.  Agreed-upon Reductions

Defendants asked the Court to reject fees billed in a February 25, 2015, entry as duplicative of fees billed in a February 17, 2015, entry. (Def. Mem. in Opp., [Docket No. 164], 20). In her Reply Memorandum, Plaintiff acknowledged that this was an inadvertent duplication and thus withdrew the billing entry for February 25, 2015. (Plf. Reply Mem., [Docket No. 170], 19). In addition, Plaintiff has informed the Court that the entry for June 20, 2014, was erroneously included on the invoice. (Id.). Accordingly, the Court does not factor those hours into its calculation of the lodestar amount.

#### 2.  Intra-firm conferences

Defendants also ask the Court to reject Plaintiff's request for attorney's fees for in-firm conferences. (Def. Mem. in Opp., [Docket No. 164], 20-21). The Court may decline to award attorney's fees for work billed that is duplicative. See, Germain Real Estate Co., LLC v. HCH Toyota, LLC, 778 F.3d 692, 697 (8th Cir. 2015) (finding no abuse of discretion where district court reduced requested attorney's fees because they were duplicative).

Specifically, Defendants challenge the following entries:

- March 22, 2016 – "Conference with [Attorney Miller-Van Oort] and [Attorney Wolpert] to discuss rebuttal experts" – billed by Attorney Strauss for 0.10 hours.
- March 31, 2016 – "TC with [Attorney Wolpert] re:  deposition issues related to damages" – billed by Attorney Miller-Van Oort for 0.20 hours.
- May 13, 2016 – "Confer w/ RB & [Attorney Strauss] re: upcoming depos and schedule for same, prep for same, and strategy" – billed by Attorney miller-Van Oort for 0.20 hours.
- May 16, 2016 – "Work with [Attorney Wolpert] on scheduling depositions and revising 30(b)(6) notice to Waite Park" – billed by Attorney Strauss for 0.40 hours.
- May 25, 2016 – "Travel to Waite Park for 30(b)(6) Deposition of Waite Park; take Waite Park deposition; return to Sapientia following Waite Park deposition; discuss deposition with [Attorney Wolpert]; draft email to

[Attorney Miller-Van Oort] about deposition to help her prep for Collins deposition" – billed by Attorney Strauss for 8.2 hours. (Defendants challenge the portion of this billing that relates to inter-firm discussion of the case; Defendants estimate that portion to be 3.2 hours.)

- June 14, 2016 – "Critical path meeting with team" – billed separately by Attorney Wolpert, Attorney Strauss, and Attorney Miller-Van Oort for 1.1 hours each.[3]
- June 27, 2106 – "analyze damages; communicate w/ client re: [same]; confer w/ legal team" – billed by Attorney Miller-Van Oort for 1.7 hours.
- June 27, 2016 – "meeting with [Attorney Miller-Van Oort] and [Attorney Strauss] to discuss damages related to Waite Park for settlement demand" – billed by Attorney Wolpert for 0.20 hours.

(See, Invoice, [Docket No. 147-1], 2-4; Def. Mem. in Opp., [Docket No. 164], 20-21).

Defendants provide no legal authority for their assertion that it is improper to award attorney's fees for in-firm conferences between multiple attorneys from that firm representing a party. The Court notes, however, that at least one other Magistrate Judge within this District has, albeit without detailed explanation, reduced an award of attorney fees where "some of the fees resulted from intraoffice conferences." See, Damgaard v. Avera Health, No. 13-cv-2192 (RHK/JSM), 2015 WL 9860267, * 2 (D. Minn. June 18, 2015). Billing for intra-firm conferences between attorneys working on a single case is not per se unreasonable. See, Wabasha v. Solem, 580 F. Supp. 448, 459 (D. S.D. 1984) ("The Court acknowledges the necessity for meeting among counsel to discuss case strategy and other aspects of the case."). Thus, a party may recover reasonable attorney's fees for such conferences. The problem arises when intra-firm communications and conferences are billed separately by each attorney involved.

Decisions by other district courts within the Eighth Circuit support a finding that billing for multiple attorneys within one firm who were involved in a single intra-firm conference is

---

[3]Plaintiff's counsel explained in the Reply Memorandum and at the motions hearing that "critical path" meetings are "team meetings or discussion related to strategic planning or next-steps (i.e. what is the next important and strategic step down the litigation path)." (Plf. Reply Mem., [Docket No. 170], 16; see also October 11, 2016, Motions Hearing, Digital Record, 2:00-01).

duplicative. See, Burchell v. Green Cab Co., Inc., No. 5:15-CV-05076, 2016 WL 894825, *3 (D. W.D. Ark. March 8, 2016) (finding "redundant or duplicative . . . two attorneys [from the same firm] billing for the same communication or conference"); In re Agriprocessors, No. 08-02571, 2009 WL 4823808, *3 (D. N.D. Ia. Dec. 8, 2009) (finding "most troubling . . . the duplicative billings for intra-office or co-counsel conferences.").

In addition, courts outside the Eighth Circuit have also reduced attorney fee awards where the party requesting the award has included time billed by multiple attorneys in the same firm for communication with each other. See, e.g., Pollara v. Ocean View Inv. Holding LLC, No. 9-60, 2015 WL 4735205, *2 (D. V.I. May 21, 2015) ("Multiple lawyer conferences, or intra-firm conferences, if not involving opposing counsel, are duplicative and not reimbursable."); Ash Grove Cement Co. v. Liberty Mut. Ins. Co., No. 3:09-cv-00239-HZ, 2014 WL 837389, *5 (D. Or. March 3, 2014), aff'd by 649 Fed. Appx. 585 (9th Cir. 2016) ("Generally, '[w]hen attorneys hold a telephone or personal conference, good "billing judgment" mandates that only one attorney should bill that conference to the client, not both attorneys.'"); Sec. Software Sys., Inc. v. Sec. Software Sys., Ltd., No. 05 C 3787, 2007 WL 967890, *2 (D. N.D. Ill. March 29, 2007) ("[W]henever the time sheets reflect intra-firm conferences between two lawyers, only the time of the higher-priced lawyer will be allowed (the other lawyer's time will be eliminated from the award.").

All of these cases support this Court's conclusion in the present case that double- and triple-billing of meetings between attorneys in the law firm representing Plaintiff is duplicative, and it will reduce the number of hours included in the calculation of the lodestar amount accordingly. The Court declines  to deduct all time billed on intra-firm conferences; as noted above, it is not per se unreasonable for multiple attorneys to work on a single case, or for those

attorneys to discuss the case and bill such a discussion for a reasonable amount of time. Thus, the Court need not adjust the billing for time entries showing intra-firm meetings for which only one attorney's time is billed in the documentation submitted in support of Plaintiff's Motion for Attorney's Fees.

However, on June 14, 2016, Attorney Wolpert, Attorney Strauss, and Attorney Miller-Van Oort held a "[c]ritical path meeting," for which each attorney individually billed 1.1 hours. The Court finds this billing duplicative and reduces the number of hours to reflect billing by only one attorney for this conference. Similarly, on June 27, 2016, Attorney Miller-Van Oort billed 1.7 hours for "analyze damages; communicate w/client re: [same]; confer w/legal team" and Attorney Wolpert billed .20 hours for "meeting with SMV and JS to discuss damages related to Waite Park for settlement demand." (Invoice, [Docket No. 147-1], 4). From these entries, the Court concludes that both attorneys were billing for the same intra-firm meeting. Accordingly, the Court removes Attorney Wolpert's time to reflect billing by only one attorney for this conference.

Although Defendants have not challenged other instances of intra-firm billing, the Court notes that the invoice submitted by Plaintiff reflects other entries which reflect triple-billing. In the interest of fairness, the Court will similarly adjust these entries. On March 15, 2016, Attorney Strauss billed 0.15 hours for a "[c]all with M. Lanterman regarding his rebuttal expert witness report," Attorney Wolpert billed 0.35 hours for "[r]eview expert disclosures; conference call with Lanterman and team re expert discovery," and Attorney Miller-Van Oort billed 0.15 hours for a "[m]tg w/M. Lanterman discussing possible rebuttal testimony." (Invoice, Docket No. 147-1], 2). The Court removes Attorneys Strauss and Miller-Van Oort's entries as duplicative of Attorney Wolpert's entry.

Accordingly, for the reasons stated above, the Court removes these duplicative billings and will not include the identified hours when calculating the lodestar amount of attorney's fees.

### 3.  Exaggerated Entries

#### a.  March 30, 2015

Next, Defendants take issue with an entry on March 30, 2015, in which Attorney Strauss billed 0.50 hours at $400 per hour for "Negotiation with counsel for Cities re language of Stipulation for Protective Order." (Def. Mem. in Opp., [Docket No. 164], 22). Defendants assert that the negotiation consisted of only two emails from the cities' counsel and two emails from Plaintiff's counsel, which do not justify 30 minutes of billed time. (Id.).

In response, Plaintiff submitted to this Court an affidavit from Attorney Strauss in which he affirms that he "actually spent half an hour negotiating a change to the Stipulation for a Protective Order." (Strauss Aff., [Docket No. 171], 1). In the affidavit, Attorney Strauss avers that there were five emails exchanged over the course of a day; this assertion is supported by Exhibit 3 to an affidavit submitted by defense counsel which contains the emails in question. (Id. at 2; Angolkar Aff., [Docket No. 165], 10-12). In light of the affidavits, the number of hours claimed in this entry is not exaggerated and the Court will not exclude it from the lodestar amount calculation.

#### b.  May 25, 2016

Next, Defendants challenge the 8.2 hours Attorney Strauss billed on May 25, 2016, for "[t]ravel to Waite Park for 30(b)(6) Deposition of Waite Park; take Waite Park deposition; return to Sapientia following Waite Park deposition; discuss deposition with Robin; draft email to Sonia about deposition to help her prep for Collins deposition." (Def. Mem. in Opp., [Docket No. 164], 23; Invoice, [Docket No. 147-1], 4). Defendants argue that the 153 miles claimed for

mileage costs related to that deposition equate to 2.5 hours of traffic time, which should have been billed at half of Attorney Strauss' hourly rate. (Def. Mem. in Opp., [Docket No. 164], 23-24). In addition, adding that 2.5 hours to the time of the deposition, which lasted approximately 2.5 hours, leaves 3.2 hours for the discussion and email drafting noted in the billing entry. Defendants assert this is unreasonable. (Id.).

In an affidavit submitted to this Court, Attorney Strauss claims that travel to the deposition took 1.5 hours and that his practice is to arrive early and continue preparations for the deposition; thus, for a 9:00 a.m. deposition, he would have begun traveling by 7:00 a.m. (Strauss Aff., [Docket No. 171], 3). After the deposition ended, Attorney Strauss would have returned to the law firm and arrived by 1:45 or 2:00 p.m., picking up lunch on the way. (Id. at 3-4). Once at the office, Attorney Strauss "spent considerable time" discussing the deposition and its implications with Attorney Wolpert and wrote a lengthy email to Attorney Miller-Van Oort regarding the matter. (Id. at 4). He sent that email at 3:43 p.m. and did not work on any other matters until after he sent the email. (Id.). Therefore, after deducting .5 hours for lunch, Attorney Strauss billed 8.2 hours for the day. (Id.).

Based upon Attorney Strauss' representations in his affidavit, the Court holds that the amount of time billed in this entry was reasonable and is recoverable. Moreover, as to Defendants' assertion that "[r]eimbursement for travel costs should be compensated at half the attorneys' hourly rate," (see Def. Mem. in Opp., [Docket No. 164], 23-24), the case Defendants cite in support is from the United States District Court for the District of Columbia. See, Harvey v. Mohammed, 951 F. Supp. 2d 47, 63 (D. D.C. 2013). However, the Eighth Circuit, which controls here, recently reiterated that it has:

> long recognized a "presumption . . . that a reasonable attorney's fee includes
> reasonable travel time billed at the same hourly rate as the lawyer's normal

working time," absent a showing the award would be unreasonable, for example, because "the lawyer did not customarily charge clients for travel time, or . . . did not have other work that could have been done during that time had he not been traveling."

Ludlow v. BNSF Ry. Co., 788 F.3d 794, 803-04 (8th Cir. 2015). In the case presently before this Court, Defendants have made no such showing of unreasonableness. Therefore, the presumption that the reasonable travel time could be properly billed at Attorney Strauss' normal hourly rate has not been rebutted.

### c.   May 27, 2016

Defendants also challenge a billing entry for May 27, 2016. (Def. Mem. in Opp., [Docket No. 164], 24). The entry shows Attorney Strauss billing 4.8 hours for "Drive to Brainerd for Collins and Turner depositions; take said depositions; return to Twin Cities (split between Cities and Counties)." (Invoice, [Docket No. 147-1], 4). At the relevant times, Jessica Turner was an employee of the Crow Wing County Sheriff's Office whom Plaintiff alleged illegally accessed Plaintiff's data three times. (Amend. Compl., [Docket No. 68], 10; Amend. Compl., Plf. Exh. E, [Docket No. 68-2], 1). Defendants argue that they should not pay attorney's fees for the 40 minutes between the depositions because "the delay was caused by confusion between Plaintiff's counsel as to who would take Turner's deposition." (Def. Mem. in Opp., [Docket No. 164], 24).

Attorney Strauss states in his Affidavit that he left home in Minneapolis to travel to Defendant Collins' deposition in Brainerd at 9:30 a.m. on May 27, 2016, because it was Friday before Memorial Day weekend, and he anticipated Brainerd being very busy. (See, Strauss Aff., [Docket No. 171], 4). Once he arrived in Brainerd, Attorney Strauss claims that he spent time continuing to prepare for Defendant Collins' deposition, which began at 1:10 p.m. (Id.; Angolkar Aff., [Docket No. 165], 15). Defendant Collins' deposition ended at 2:35 p.m. (Angolkar Aff., [Docket No. 165], 16).

Clearly, the time spent at Defendant Collins' deposition is correctly included in the reasonable hours expended on claims against Defendants Collins and Waite Park. The invoice submitted to the Court does not indicate precisely how much of the time billed was for travel to and from the depositions. (Invoice, [Docket No. 147-1], 4; Strauss Aff., [Docket No. 171], 4-5). Counsel does, however, indicate in the costs portion of the invoice that it was a round-trip of 282 miles, or 141 miles each way. (Invoice, [Docket no. 147-1], 5). Allotting 2.5 hours for travel each way, as Defendants did in their Memorandum in Opposition, ([Docket No. 164], 24-25), would result in the following calculation:  Attorney Strauss left his home at 9:30 a.m. and arrived in Brainerd at 12:00 p.m., spent 1 hour and 10 minutes preparing for Collins' deposition, took Collins' deposition for 1 hour and 25 minutes, and had a 2.5 hour drive home. Deducting half of the travel time in order to split the travel costs because Turner's deposition should not be attributed to Defendants Collins and Waite Park, the time between arriving in Brainerd, and the time spent taking Collins' deposition results in 5.08 hours.

In light of these calculations, it is reasonable for Attorney Strauss to bill 4.8 hours for Collins' deposition and travel time. Thus, the Court declines Defendants' request to reduce the hours billed in this entry. Additionally, Defendants' argument regarding reduced billing for travel time in this entry fails for the reasons already articulated above.

### 4.   Clerical Work

Next, Defendants ask the court to reject certain entries as clerical work. (Def. Mem. in Opp., [Docket No. 164], 22). Routine clerical tasks "cannot fairly be accounted for at an

attorney's, or even a paralegal's, billing rate." <u>Rosen v. Wentworth</u>, 13 F. Supp. 3d 944, 952-53

(D. Minn. 2014). Defendants take issue with the following entries[4]:

- January 28, 2016 – "Preparation of subpoena, service letter & supporting exhibits to MN DPS for additional officer access information" – billed by P.A.R. for .5 hours.
- February 19, 2016 – "Drafted 2nd set of interrogatories & requests for production to defendant employers & 1st set to defendant employees" – billed by P.A.R. for 1.15 hours.
- March 8, 2016 – "Seperated [*sic*] discovery requests by entity/individual" – billed by P.A.R. for 1.25 hours.
- March 10, 2016 – "Finished seperating [*sic*] discovery by entity/individual and printed for attorney signature; prepared service letters" – billed by P.A.R. for 1.25 hours.
- April 10, 2016 – "Draft Gottstein depo notice" – billed by Attorney Miller-Van Oort for .05 hours.
- May 16, 2016 – "finalize deposition schedule; create amended notices of deposition and notices of deposition for individual defendant and WP; serve notices" – billed by Attorney Wolpert for .50 hours.
- May 17, 2016 – "finalize notices of deposition and serve re WP" – billed by Attorney Wolpert for .20 hours.

(Invoice, [Docket No. 147-1], 2-3).

Defendants argue that this work was clerical and the Court should exclude it from any

attorney's fees awarded. (Def. Mem. in Opp., [Docket No. 164], 22). Plaintiff replies that the

entries by Paralegal P.A.R. were substantive and that preparation of 30(b)(6) notices requires

attorney attention. (Plf. Reply Mem., [Docket No. 170], 17). Additionally, Plaintiff contends that

Attorney Miller-Van Oort's billing for .05 hours for preparing an expert's deposition notice is

efficient and reasonable. (<u>Id.</u>).

The Court grants Defendants' request as to the January 28, 2016; March 8, 2016; and

March 10, 2016, entries by Paralegal P.A.R. These entries consist of time billed for obvious

clerical work that does not require any specialized legal analysis or knowledge. Thus, the Court

---

[4] Defendants also challenge the June 20, 2014, entry by P.A.R., but since Plaintiff agrees to withdraw that entry for other reasons, (<u>see</u> Plf. Reply Mem., [Docket 170], 19), and the Court has done so, <u>supra</u>, the Court need not address it here.

rejects the request for fees for those entries, and removes them from the hours by which the Court will calculate the lodestar amount.

The Court disagrees, however, with Defendants' characterization of the remaining challenged entries as mere clerical work. Drafting discovery requests and an expert deposition notice are tasks which are not clearly clerical and require some legal analysis and knowledge. Therefore, the time billed for those entries remain in the calculation of the attorney's fee award.

### 5.  The Complaint

Defendants next ask the Court to reduce the fee related to drafting the Complaint, alleging that it is a "cookie-cutter" complaint identical to at least 17 other pleadings previously filed by Plaintiff's counsel in other cases. (Def. Mem. in Opp., [Docket No. 164], 20). Defendants further assert that the only changes made to the Complaint in this case were that the Complaint was "edited to change the parties, a description of why the plaintiff was interesting, and the number of alleged accesses." On the invoice submitted to the Court, Plaintiff allocated to Defendants, as one of 13 "defendant groups" made up of the respective City and County Defendants, a total of 0.57 hours over three billing entries, for work on drafting, revising, and finalizing the Complaint. (Invoice, [Doc. 147-1], 1).

Although the cases Defendants have cited in support of their request for the Court to reduce the fees awarded for work on the Complaint in the case presently before this Court are factually distinguishable from the present case, they are nonetheless persuasive. In Weaver v. Lighthouse Recovery Assocs., LLC, No. 13-cv-1078-CMA-MJW, 2013 WL 6096137, *1-2 (D. Co. Nov. 19, 2013), the District Court of Colorado rejected an attorney's request for fees for 10 hours of work on a case that spanned less than 2 months and for which the attorney claimed he had spent 2 hours drafting the summons and complaint and 3 hours reviewing documents. The

Weaver court noted that the plaintiff's attorney handled an "extremely high number of similar cases" and that "many of his court pleadings" had a "cookie-cutter quality." In addition, the court noted counsel's erroneous billing of administrative tasks at an attorney's hourly rate and counsel's improper inflation of time spent reviewing documents. Id. at *2. Thus, the court reduced the attorney's fees award to compensate 8 hours of work. Id.

In Brother v. Miami Hotel Invs., Ltd., 341 F. Supp. 2d 1230, 1239 (D. S.D. Fla. 2004), the Southern District of Florida rejected an attorney's claim that he had spent "20 to 25 hours on his fee application," noting that counsel's "memorandum in support was boilerplate, virtually identical to his other applications in other cases." The Brother court held that spending that much time "to justify having spent 50 hours or so on the case-in-chief" was "totally out of proportion"; thus, the court reduced the time to 12 hours. Id.

Finally, in Spegon v. Catholic Bishop of Chicago, 989 F. Supp. 984, 989 (D. N.D. Ill. 1998), the Northern District of Illinois rejected the reasonableness of requesting 1.6 hours to draft a complaint that "was nearly identical to another complaint filed ten days earlier by [plaintiff's counsel] with this Court." The Spegon court stated, "Even if [counsel] himself retyped the Complaint from the [previous] case, the Court does not believe that it took him 1.6 hours to do so." Id.

Likewise, the Complaint filed in this case is indeed remarkably similar to complaints Plaintiff's counsel have filed previously in many other cases. Other than changing the parties' identities and facts attempting to allege what about the plaintiff or plaintiffs in each case may have sparked interest to undertake the illegal accesses to his or her information, the complaints in those cases are nearly identical, substantively and, in some instances, in wording. See, Pinski, et al. v. City of Cottage Grove, No. 14-cv-325 (DWF/SER) ([Docket No. 1]); Rollins v. City of

Albert Lea, et al., No. 14-cv-299 (SRN/HB) ([Docket No. 1]); Barghini v. Anoka Cty., et al., No. 14-cv-297 (JNE/HB) ([Docket No. 1]); Delaney v. Beltrami Cty., et al., No. 14-cv-358 (PJS/LIB) ([Docket No. 1]); Heglund v. Aitkin Cty., et al., No. 14-cv-296 (ADM/LIB) ([Docket No. 1]); Krekelberg v. Anoka Cty., et al., No. 13-cv-3562 (DWF/TNL) ([Docket No. 1]); Kampschroer, et al. v. Anoka Cty., et al., No. 13-cv-2512 (SRN/TNL) ([Docket No. 1]); Mitchell v. Aitkin Cty., et al., No. 13-cv-2167 (JNE/FLN), ([Docket No. 1]); Mallak v. Aitkin Cty., et al., No. 13-cv-2119 (DWF/LIB) ([Docket No. 1]); Loeffler v. City of Anoka, et al., No. 13-cv-2060 (MJD/TNL) ([Docket No. 1]); McDonough v. Al's Auto Sales, Inc., et al., No. 13-cv-1889 (DSD/FLN) ([Docket No. 1]).

For example, comparing the Complaint filed in the case presently before the Court and the complaint filed 16 days earlier in Pinski, the Court notes that other than (1) slight rewording, such as changing the phrase "impermissible purposes" to read "purposes not permitted by the DPPA," (2) changing the plaintiff's name and the factual allegations specific to the plaintiff, and (3) replacing defendant entities' names as needed, the two complaints are virtually indistinguishable. Even discounting paragraphs in which the only change was Plaintiff's name, over one-third of the paragraphs in the Complaint in the case presently before the Court and the earlier complaint in Pinski are identical. (Compare Complaint, [Docket No. 1], 24, ¶¶ 25, 27, 30-31, 33, 49-52, 121-27, 131-33, 135-38, 140-45, 151-53, 155, 157, 159-69, 171-73, 174, 176, 181, 184, 186-87, 189, 191-92, 194, 206, 208, 210, 121-14, 217-26, 231, 234-49, 257-59, 269-70 ,273, 277-79, 281-82, 296-306, 312, 320, 323, 326-28, 330, 337, with Pinski, Complaint, [Docket No. 1], ¶¶ 22, 24, 27-28, 30, 37-40, 103-09, 113-15, 117-20, 126-31, 136-38, 140, 142, 144-154, 156-59, 161, 166, 169, 171-72, 174, 176-77, 180, 194, 196, 198, 200-02, 205-214, 219, 222-37, 245-47, 257-58, 261, 265-67, 269-70, 284-94, 300, 308, 311, 315-17, 319, 326).

Plaintiff's counsel is involved in numerous lawsuits alleging DPPA violations, and the Court does not expect counsel to reinvent the wheel with each complaint. Nevertheless, because of the extraordinary and extensive similarity between complaints, it is unreasonable to claim, as Plaintiff's counsel does here, that the de minimus substitutions required to personalize the Complaint to the Plaintiff in the case presently before the Court took almost 7 and a half hours to implement and review, leaving Waite Park responsible for 0.57 hours. The Court holds that adjusting the Complaint to relate to Waite Park, including drafting and review, could not reasonably have taken more than 0.5 hours.[5] In addition, although Plaintiff's counsel billed the work in part to a paralegal at $100 per hour, a junior attorney at $225 per hour, and a more senior attorney at $400 per hour, the Court holds that the necessary work on the present Complaint could have been completed by the more junior attorney.

Accordingly, the Court awards 0.5 hours at the junior attorney's billing rate of $225 per hour for work done on the Complaint as it relates to Waite Park, for an award of $112.50. This will be included in the Court's calculation of the lodestar amount.

**b.   Apportionment of Hours Worked**

In support of her request for attorney's fees Plaintiff's counsel has submitted an invoice detailing work done and fees assessed which were "directly attributable to Plaintiff's prosecution of her claims against Defendants Waite Park and Jonathan Collins." (Miller-Van Oort Aff., [Docket No. 147], 8).

At the October 11, 2016, Motions Hearing, Plaintiff explained that the invoice includes (1) time billed only to the case file established for the case against Waite Park and (2) time billed for work done that was more generally applicable to multiple defendants; the latter category is

---

[5] In fact, the Court believes that counsel could have so tailored the Complaint in less time, but in its discretion, the Court will award 0.5 hours of attorney's fees for work done on the Complaint.

denoted by a fraction at the end of the entry. (October 11, 2016, Motions Hearing, Digital Record, 1:50-52). The first category of work is for that which was done solely for the benefit of the claim against Waite Park and the entries reflecting this this type of work contain no fraction. For example, an entry dated May 19, 2016, billing time during which a paralegal "[r]eviewed documents produced by Waite Park & Collins," has no fraction at the end of the entry. (Invoice, [Docket No. 147-1], 4). This indicates that this time was billed only to the Waite Park case file. The Court accepts Plaintiff's counsel's designation of these entries as billings for work attributable solely to Waite Park. Accordingly, other than those entries reduced or removed as explained above, the hours submitted to the Court for work done only on the claim against Waite Park are left intact.

For the remaining entries, which attempt to determine a portion of billing attributable to Waite Park for work done that was also applicable to claims against defendants other than Waite Park, Plaintiff apportions the work between groups of defendants and uses the motions to dismiss as the point at which the number of defendants changed. At the October 11, 2016, Motions Hearing, Plaintiff's counsel further explained that for work done that was more generally applicable to multiple defendants, Plaintiff's counsel divided the total time billed by the number of defendant groups at issue and indicated that the division occurred by placing a fraction at the end of the entry on the invoice submitted to this Court. (October 11, 2016, Motions Hearing, Digital Record, 1:52-53). For example, Plaintiff's counsel's records include an entry on November 12, 2013, that bills .05 hours for "Draft Complaint against cities and counties (1/13)." (Invoice, [Docket No. 147-1], 1). The fraction indicates that Plaintiff's counsel took the total amount of work spent drafting the Complaint against the City and County Defendants and divided that amount by 13—for the 13 City and County Defendants—in order to determine the

amount that Plaintiff attributes to Waite Park. (October 11, 2016, Motions Hearing, Digital Record, 1:53-54).

Where Plaintiff seeks an award of fees for work in furtherance of general claims against all City and County Defendants that was done prior to determination of the motions to dismiss, Plaintiff taxes Defendants Waite Park and Collins for 1/13 of the time billed, because up until that point there were 13 City and County Defendants, including Waite Park—Plaintiff named Collins as a defendant after the motions to dismiss were ruled upon. For work performed on the claims in general and billed after the determination of the motions to dismiss, Plaintiff taxes half of the fees to Defendants Waite Park and Collins because at that point, there were only two "defendant groups" and two defense counsel remaining in the case. (Miller-Van Oort Aff., [Docket No. 147], 7). The first "defendant group" consisted of the County Defendants:  Aitkin County, Cook County, Crow Wing County, Mille Lacs County, and Morrison County, which were all represented by one law firm. The second "defendant group," represented by different counsel, was the City of Waite Park.

Defendants, however, propose a different apportionment scheme. (Def. Mem. in Opp., [Docket No. 164], 12-18). They assert that the calculation should focus on the number of alleged illegal accesses, rather than the number of defendants. (Id. at 13). Defendants contend that the appropriate calculation considers that Plaintiff alleged 2 illegal accesses attributable to Waite Park, Collins, and Hill, out of a total of 84 illegal accesses alleged in the initial Complaint. (Id. at 13).[6] Therefore, according to Defendants, their share of attorney fees for common work done prior to the resolution of the Motions to Dismiss would be 2/84, not 1/13. (Def. Mem. in Opp.,

---

[6] Defendants arrive at these numbers by information contained in Plaintiff's Exhibit A, which was attached to her initial Complaint and listed 84 alleged illegal access, and Plaintiff's Exhibit E, which was attached to her Amended Complaint and identified the person who initiated the allegedly illegal access. Taken together, these documents attribute a September 21, 2010, access to Hill and a January 16, 2011, access to Collins, both of which survived the Motions to Dismiss. (Compl., Plf. Exh. A, [Docket 1-1], 1-2; Amend. Compl., Plf. Exh. E, [Docket No. 68-2], 1-2).

[Docket No. 164], 13). After the Order on the Motions to Dismiss, there were 33 remaining accesses at issue, with 2 attributable to Collins and Hill, so Defendants calculate post-Dismissal Order fees—those incurred after December 29, 2014—for common work using the fraction 2/33. (Id. at 15).

Although Defendants argue that two accesses are at issue in Plaintiff's Motion for Attorney's Fees—one access by Collins and one by Hill—Plaintiff adamantly maintains that she seeks attorney's fees only related to the access by Collins. (See, generally Plf. Reply Mem., [Docket No. 170]). Accordingly, when the Court considers whether to utilize a per-access or a per-defendant-group apportionment strategy, the Court calculates the award of attorney's fees by including only one access:  the access by Collins, an employee of Waite Park.

Neither party cites nor has the Court's independent research found any controlling case law or even a persuasive discussion of which framework is more commonly accepted, nor has independent research uncovered a trend in caselaw. Simply put, this area of the law is still in its infancy. Although Tanick's Expert Declaration states that Plaintiff's proposed apportionment is reasonable and appropriate and that the amount ascribed to Waite Park thereunder is reasonable, that evaluation is not binding on this Court. (Tanick Dec., [Docket No. 146], 4).

In any event, at least one Minnesota federal district court previously has held that it was not improper to allocate attorney fees based on the number of "major groups of defendants in the lawsuit." See, Rasmusson, 2013 WL 3353931, at *4. Rasmusson, like the present case, originated out of DPPA claims brought against multiple defendants. Id. at *1. As part of a settlement agreement between plaintiff and some of the defendants, the parties submitted the question of attorney's fees and costs to the district court. Id. Although the claims for which the court awarded fees and costs were not themselves DPPA claims because the settling defendants

were Commissioners of the MN Department of Public Safety ("DPS"), against whom DPPA claims may not be brought, one question before the court was whether the plaintiff improperly allocated the attorney fees done on work common to the settling defendants and other defendants. Id. at *1, 4. Noting that the defendants did not argue why their proposed 5 percent allocation was more appropriate than the plaintiff's proposed 25 percent allocation and that experts had stated the 25 percent allocation was fair and reasonable, the district court concluded it could not say the 25 percent allocation was improper. Id. at *4.

Like Rasmusson, the case currently before the Court involves multiple DPPA claims based on multiple accesses. The present case, however, is distinguishable in that the attorney fees and costs at issue are DPPA claims and this Court has been presented with arguments from both sides supporting their respective allocations. Therefore, the Court finds that Rasmusson is not applicable and declines Plaintiff's request to use a similar defense group based allocation plan in the case presently before the Court.

In addition, neither of the apportionment strategies proposed by the parties truly reflects a real-world application of litigation resources. Plaintiff's apportionment strategy is based on the belief that in a case involving two groups of defendants, with one group having illegally accessed Plaintiff's data 31 times and the other group having illegally accessed Plaintiff's data 2 times, Plaintiff's counsel would divide time spent on tasks applicable to all of the accesses equally between the two groups. That would result in 50% of litigation resources being spent on only two accesses, to the detriment of the claims based upon the other 31 accesses, which is not realistic. Although it is also unrealistic to imagine Plaintiff's counsel spending exactly the same amount of time on each access. Nonetheless, Defendant's apportionment strategy, which is based

upon the number of accesses at issue in the case, is more representative of a practical allotment of resources.

The Court concludes that a per-access apportionment system reflects a realistic division of time and labor more accurately than a per-defendant-group apportionment system, but the Court has adjusted Defendant's calculations. First, the Court has calculated the total amount billed for the work detailed in each entry by multiplying the amount Plaintiff seeks to recover from Defendant Waite Park by the number of defendant groups to which Plaintiff's counsel asserts the work applied. Next, this Court divides the total amount by the number of accesses at issue.

The record shows that Plaintiff's initial Complaint, filed on February 20, 2014, alleged 84 accesses. (Compl., [Docket No. 1], 10; Plf. Exh. 1, [Docket No. 1-1], 1-2). On December 29, 2014, the district court entered its Memorandum Opinion and Order granting in part and denying in part the Defendants' Motions to Dismiss. (Order of Dismissal, [Docket No. 50], 24 n.6, 38 n.11). Thirty-three accesses survived the Order:  three from Aitkin County, one from Cook County, 14 from Crow Wing County, two from the City of Little Falls, 12 from Mille Lacs County, and one from the City of Waite Park. (Id. at 6-7, 24 n.6, 38 n.11). Therefore, for entries prior to December 29, 2014, the total amount billed for multi-defendant work is divided by 84; for entries on or after December 29, 2014, the total amount is divided by 33.[7]

For example, Plaintiff's counsel's records include an entry on November 12, 2013, that bills .05 hours for "Draft Complaint against cities and counties (1/13)." (Invoice, [Docket No.

---

[7] Upon review of the record, the Court sees that the number of accesses in the case appears to progressively diminish even after the Order of Dismissal. However, Defendants ask only that the Court distinguish between accesses which survived the Order of Dismissal and those which did not. (Defs.' Mem. in Opp., [Docket No. 164], 13-15). In her Reply to Defendants' Memorandum, Plaintiff did not challenge that accounting of accesses, instead reiterating her position that the Court should allocate the costs per defendant group. (Plf. Reply Mem., [Docket No. 170], 1-22). Therefore, the Court, in apportioning attorney's fees per access, adopts the Defendants' proposed framework of 84 accesses at issue prior to the Order of Dismissal and 33 accesses at issue after it.

147-1], 1). Multiplying 0.05 hours by 13 City and County Defendants shows that Plaintiff's counsel spent a total of 0.65 hours drafting the Complaint as it related to the City and County Defendants. That time was billed at $225 per hour, for a total of $146.25. (Id.) At this point in the case, there were 84 accesses at issue. (Compl., [Docket No. 1], 10; Plf. Exh. 1, [Docket No. 1-1], 1-2). Dividing $146.25 hours by 84 accesses results in $1.74 per access. This is the amount billed that is fairly attributable to a defendant or multiple defendants with one access at issue, such as Defendants Waite Park and Collins.

For each shared-work entry in the records submitted to this Court, the Court has carefully considered the point at which the work was done and how many accesses were at issue at that time, as set forth above. The attorney's fees as adjusted are listed in the table below.

| Date | Description | Time on Invoice | Hourly Rate | Total Amount Billed to all Defs. | Number of Accesses at issue in the Case | Cost Per Access |
|------|-------------|-----------------|-------------|----------------------------------|------------------------------------------|-----------------|
| 6/3/2014 | Working on Response to Cities Brief (1/3) | 0.8 | $225 | $540.00 | 84 | $6.43 |
| 10/02/2014 | Attend hearing for motion to dismiss (1/14) | 0.15 | $400 | $840.00 | 84 | $10.00 |
| 2/16/15 | Draft Rule 26(f) Report; email with counsel re same (1/2) | 0.6 | $400 | $480.00 | 33 | $14.55 |
| 2/17/2015 | Participate in Rule 26(f) conference; revise report; draft correspondence to Magistrate requesting tele Rule 16 conference; draft email to counsel sending final draft of Rule 26(f) Report (1/2) | 0.4 | $400 | $320.00 | 33 | $9.70 |
| 3/22/2015 | Revise interogs & Ex. A to DPS; analyze pre-trial order; Revise Rule 26a disclosures (1/2) | 0.7 | $400 | $560.00 | 33 | $16.97 |

| 3/15/2016 | Review expert disclosures; conference call with Lanterman and team re expert discovery (1/2) | 0.35 | $400 | $280.00 | 33 | $8.48 |
|-----------|-----------|------|------|---------|----|-------|
| 3/22/2016 | Conference with Sonia and Robin to discuss rebuttal experts (1/2) | 0.1 | $400 | $80.00 | 33 | $2.42 |
| 3/24/2016 | Discuss prep of witness kit for [Plaintiff's] depo; review previous depo transcripts to identify expected depo questions (1/2) | 2 | $400 | $1,600.00 | 33 | $48.48 |
| 3/28/2016 | Conf with Larry re [Plaintiff] prep; conf with [Plaintiff] re pleadings to review before dep prep (1/2) | 0.85 | $400 | $680.00 | 33 | $20.61 |
| 3/28/2016 | [Plaintiff] depo prep-review key pleadings and documents; provide direction on contents of witness kit (1/2) | 0.05 | $400 | $40.00 | 33 | $1.21 |
| 3/28/2016 | Send email to client re [scheduling] (1/2) | 0.65 | $400 | $520.00 | 33 | $15.76 |
| 3/29/2016 | Review record/pleadings and prepare for client depo prep session; list of anticipated questions (1/2) | 4.25 | $400 | $3,400.00 | 33 | $103.03 |
| 3/30/2016 | Confer w/ RW & client in depo prep session re issues to anticipate (1/2) | 0.8 | $400 | $640.00 | 33 | $19.39 |
| 3/30/2016 | Review record for depo prep session with client; depo prep with client; coordinate with SMV re new client information on damages and online presence (1/2) | 4.5 | $400 | $3,600.00 | 33 | $109.09 |
| 3/31/2016 | TC w/R.W. re: deposition issues related to damages. (1/2) | 0.2 | $400 | $160.00 | 33 | $4.85 |

| 3/31/2016 | Meeting with client before deposition; attend and defend deposition; meeting with client after deposition; emails with team re deposition and settlement; begin drafting supplemental responses to discovery (1/2) | 4.6 | $400 | $3,680.00 | 33 | $111.52 |
|---|---|---|---|---|---|---|
| 4/1/2016 | Communication with SMV and Lanterman re expert report; review expert report draft; review final expert report; coordinate service issues with SMV (1/2) | 3.5 | $400 | $2,800.00 | 33 | $84.85 |
| 4/1/2016 | Draft supplemental responses to discovery and send to client for additional information and review; emails with team re settleme[nt] and impact of deposition (1/2) | 1.1 | $400 | $880.00 | 33 | $26.67 |
| 4/10/2016 | Draft Gottstein depo notice (1/2) | 0.05 | $400 | $40.00 | 33 | $1.21 |
| 4/26/2016 | prep for Gottstein depo-- review docs and prepare outline (1/2) | 0.5 | $400 | $400.00 | 33 | $12.12 |
| 5/3/2016 | Draft and serve notices of deposition for individual defendants; begin drafting 30(b)(6) notices for entity defendants; review email from opposing counsel regarding depo dates (1/9) | 0.4 | $400 | $1,440.00 | 33 | $43.64 |
| 5/13/2016 | Confer w/ RB & JAS re: upcoming depos and schedule for same, prep for same, and strategy (1/2) | 0.2 | $400 | $160.00 | 33 | $4.85 |
| 5/16/2016 | finalize deposition schedule; create amended notices of deposition and notices of deposition for individual defendant and WP; serve notices (1/2) | 0.5 | $400 | $400.00 | 33 | $12.12 |

| 5/17/2016 | Confer w/ Lanterman re: depo; travel to and attend expert depo (1/2) | 2 | $400 | $1,600.00 | 33 | $48.48 |
| 5/19/2016 | Draft email to [Plaintiff] regarding information she has relevant to depositions next week; further email exchange with [Plaintiff] re same (1/2) | 0.5 | $400 | $400.00 | 33 | $12.12 |
| 5/27/2016 | Drive to Brainerd for Collins and Turner depositions; take said depositions; return to Twin Cities (split between Cities and Counties) | 4.8 | $400 | $3,840.00 | 33 | $116.36 |
| 6/8/2016 | review email correspondence re attendance at settlement conference (1/2) | 0.1 | $400 | $80.00 | 33 | $2.42 |
| 6/14/2016 | critical path meeting with team (1/2) | 1.1 | $400 | $880.00 | 33 | $26.67 |
| 7/5/2016 | prepare for settlement conference; gather key documents for settlement conference (1/2) | 2 | $400 | $1,600.00 | 33 | $48.48 |
| 7/5/2016 | Review materials for settlement conference (1/2) | 0.4 | $400 | $320.00 | 33 | $9.70 |
| 7/6/2016 | Attend settlement conference in Duluth (1/2) | 3.75 | $400 | $3,000.00 | 33 | $90.91 |
| 7/6/2016 | Travel to and attend settlement conference (1/2) | 3.5 | $400 | $2,800.00 | 33 | $84.85 |

The total amount of attorney's fees for Defendants Waite Park and Collins' portion of work beneficial to multiple defendants, after the Court's recalculation, is $1,240.44. When added to the attorney's fees for work done solely on the claim against Defendants Waite Park and Collins, the total amount of attorney's fees—the lodestar amount—is $15,912.44.

### iii.   **Adjustment to the Lodestar**

Defendants argue that this Court should reduce the lodestar because Plaintiff had "limited success" on her claim and because Plaintiff rejected a previous substantial settlement offer. (Def.

28

Mem. in Opp., [Docket No. 164], 7). Obviously, Plaintiff takes the opposite position. (Plf. Reply Mem., [Docket No. 170], 7-13).

When considering whether to adjust the lodestar amount upward or downward, the Court may consider, among other things, "the important factor of the results obtained." Hensley, 461 U.S. at 434.[8] "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee," but where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." Id. at 435-36. "[T]he most critical factor is the degree of success obtained." Id at 436.   Whether to reduce the lodestar amount due to partial success is an equitable determination left to the Court's discretion. See, Id. at 437.

In March 2015, the Defendant Cities submitted to Plaintiff an offer of judgment pursuant to Federal Rule of Civil Procedure Rule 68 that offered $2,501.00 to settle "all of Plaintiff's claims against" "Defendants City of Baxter, City of Chaska, City of Crosby, City of Nisswa, City of Pequot Lakes, and City of Waite Park and their agents, employees or officials." (Angolkar Aff., [Docket No. 165], 5). This included "Plaintiff's claims against them as set forth in Plaintiff's Complaint or otherwise." (Id.). The Offer of Judgment expressly "allow[ed] Plaintiff's counsel to petition the Court for reasonable costs and attorney's fees solely attributed

---

[8] The Court notes that the Eighth Circuit has applied Hensley to cases outside the civil rights arena, so the parties' disagreement over whether the case presently before the Court is a civil rights action does not determine whether Hensley applies. See, e.g., Galloway v. Kansas City Landsmen, LLC, 833 F.3d 969, 974 (8th Cir. 2016) (applying Hensley in a case brought under the Fair and Accurate Credit Transactions Act and noting that "no court has held that [FACA's fee-shifting statute] usurps the discretion granted the district court in Hensley"); Hernandez v. Bridgestone Americas Tire Operations, LLC, 831 F.3d 940, 948-49 (8th Cir. 2016) (applying Hensley in a case brought under the Family Medical Leave Act); Spirtas Co. v. Insurance Co. of State of Pa., 555 F.3d 647, 655 (8th Cir. 2009) (affirming consideration of Hensley factors in an action seeking declaratory judgment on indemnification for fees in accordance with a general indemnity agreement). In addition, the parties both apply Hensley in their arguments on this Motion. (Plf. Mem. in Support, [Docket No. 145], 5; Def. Mem. in Opp., [Docket No. 164], 7). Accordingly, the Court need not further address the dispute over whether this case is a civil rights action.

to these Defendants, incurred to date, as determined recoverable under 18 U.S.C. § 2724." (Id.).

Plaintiff rejected the Offer. (Id. at 19).

In July 2016, as noted above, Plaintiff signed a general release in accordance with the ultimate settlement, which stated:

> For and in consideration of the total sum of Four Thousand Five Hundred and no/100 Dollars ($4,500.00) plus attorneys' fees and costs as determined by the Court, . . . [Plaintiff does] hereby fully and forever release, acquit and discharge the Cities of Baxter, Chaska, Crosby, Isanti, Nisswa, Pequot Lakes, and Waite Park, their agents and current and former employees (the parties released), including the League of Minnesota Cities Insurance Trust . . . from any and all past or present actions, at law or in equity, . . . arising out of the incident(s) which was the subject of [the present lawsuit].

(Id. at 8). The release also provided:  "It is specifically understood and agreed that as the prevailing party, the releasing party's counsel, Sonia Miller-Van Oort and Jonathan Strauss, SAPIENTIA LAW GROUP, may petition the Court by August 15, 2016, for reasonably attorney's fees and costs pursuant to 18 U.S.C. § 2724(b)(3)." (Id.).

First, Defendants argue that this Court should reduce the lodestar amount because Plaintiff rejected a "substantial settlement offer." (Def. Mem. in Opp., [Docket No. 164], 10-12). They claim that because Plaintiff rejected the March 2015 Rule 68 Offer, the Court should not award fees incurred after the Offer. Rule 68(c) states:  "If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made."

Defendants assert that the Rule 68 Offer of $2,501.00 was for the Waite Park single access by Collins alone. (Def. Mem. in Opp., [Docket No. 164], 11). Defendants also contend that the $4,500.00 settlement was for settlement of claims stemming from two accesses: Defendant Collins' access and an access by Defendant Gene Hill, an employee of the City of Isanti. (Id.). Defendants argue that this means that Plaintiff ultimately recovered $2,250.00 for

Defendant Collins' access, which is less than the earlier settlement Offer of $2,501.00. Thus, Defendants claim, considering the Waite Park single access, Plaintiff ultimately received less than the unaccepted Rule 68 Offer, so the Court should not allow recovery of attorney's fees incurred after that offer was made. (Id. at 11-12).

Plaintiff disagrees with Defendants' interpretation of the relevant facts. Plaintiff contends that the March 2015 Rule 68 Offer did not relate exclusively to the Waite Park access. Instead, she argues that it was made on behalf of six city entities related to 13 accesses, not including the access by Defendant Hill, resulting in an offer of $192.38 per access. (Plf. Reply Mem., [Docket No. 170], 3-4). Although Plaintiff concedes that the July 2016 settlement agreement released Defendant Hill individually, Plaintiff maintains that Defendant Mille Lacs County, not Defendant City of Isanti, was responsible for Defendant Hill's illegal access of Plaintiff's private data, so Defendant Hill's access of Plaintiff's private data is still at issue in the ongoing case. (Id. at 8). Finally, Plaintiff argues that even if the July 2016 settlement applied to Defendant Collins' and Defendant Hill's accesses, Plaintiff still obtained $2,250.00 per access, which is more than the $192.38 in the Rule 68 Offer and constitutes a success because it closely approaches the $2,500.00 in liquidated damages originally sought. (Id. at 8-9).

In support of their position, Defendants cite Parke v. First Reliance Standard Life Ins. Co., 368 F.3d 999 (8th Cir. 2004), which cited Moriarty v. Svec, 233 F.3d 955 (7th Cir. 2000). (Def. Mem. in Opp., [Docket No. 164], 10-12). In relevant part, Parke considered whether an attorney's fee award in an ERISA action was unreasonable in light of the fact that the defendant had "made a significant offer of judgment early in the litigation." 368 F.3d at 1011-12. The Eighth Circuit held that it was not, citing Moriarty for the proposition that "'[s]ubstantial settlement offers should be considered by the district court as a factor in determining an award of

reasonable attorney's fees, even where Rule 68 does not apply.'" <u>Id.</u> at 1012 (citing <u>Moriarty</u>, 233 F.3d at 967). Noting the district court's conclusion that the defendant's "failure to specifically include attorney's fees in the offer meant that Rule 68 did not *per se* preclude the award of post-offer fees," the Eighth Circuit affirmed the district court's decision to consider the rejection of the offer when determining whether to award attorney's fees and the amount of any fees awarded. <u>Id.</u> at 1012-13.

Although Defendants cite <u>Parke</u> and <u>Moriarty</u> in an effort to establish support for their position, <u>Parke</u> actually undermines Defendants' argument. In the underlying district court decision, which the Eighth Circuit affirmed in relevant part, the district court explicitly stated:

> The making of a Rule 68 offer, however, does not automatically cut off plaintiff's right to seek a fee award for post-offer legal work. If an offer of judgment does not include an offer to pay attorney's fees, and the underlying fee-shifting statute does not define attorney's fees as a part of costs, post-offer fee awards are not precluded. <u>See, e.g.</u>, <u>Sheppard v. Riverview Nursing Center, Inc.</u>, 88 F.3d 1332, 1337 (4th Cir. 1996) (reasoning that a rejection of Rule 68 offer in Title VII case did not preclude award of post-offer fees); <u>Haworth v. State of Nevada</u>, 56 F.3d 1048 (9th Cir. 1995) (holding that a Rule 68 offer does not cut off entitlement to seek post-offer fee award because the Fair Labor Standards Act defines attorney's fees separately from costs); <u>see also</u> <u>Marek v. Chesny</u>, 473 U.S. 1, 50 (1985) (Brennan, J. dissenting) (ERISA fee-shifting statute defines attorney's fees separately from costs.

<u>Parke v. First Reliance Standard Life Ins. Co.</u>, No. 99-cv-1039 (JRT/FLN), 2003 WL 131731, *2 (D. Minn. Jan. 8, 2003), <u>aff'd in part and rev'd in part by Parke</u>, 368 F.3d 999 (8th Cir. 2004).

The DPPA's fee-shifting provision defines attorney's fees separately from costs. <u>See</u>, 18 U.S.C. § 2724(3) (allowing for award of "reasonable attorneys' fees and other litigation costs reasonably incurred"). The Rule 68 Offer presently at issue before this Court expressly excluded attorney fees and costs. The Court agrees with the reasoning by the district court in <u>Parke</u>, as affirmed by the Eighth Circuit, and concludes that a Rule 68 offer of judgment, such as the one here, which expressly excludes attorney fees and costs from its offer does not per se foreclose

recovery of attorney's fees at a later date even if ultimate recovery is less than the damages provided for in the Rule 68 offer.

In any event, in the present case, the Court need not count individual accesses in order to determine that the July 2016 settlement of $4,500.00 was not less favorable than the earlier Rule 68 Offer. The earlier $2,501.00 Rule 68 Offer was inclusive of all damages for all Defendant Cities—those which had already been dismissed by the district court and those which had not. Thus, although the City of Isanti was not specifically named in the Rule 68 Offer, the Offer would have encompassed any liability by the City of Isanti for its role in or responsibility for Defendant Hill's access. The Rule 68 Offer included all rights of appeal by Plaintiff against all City Defendants and the Cities' employees, including Isanti and its employee Hill, as well as, Waite Park and Collins. From a different perspective, the present, underlying settlement released Defendant Hill individually and the City of Isanti, although Plaintiff maintains it did not entirely dispose of claims based on Defendant Hill's access asserted against Defendant Mille Lacs County. Nevertheless, the settlement for $4,500.00 had the same global effect on all of the present parties as the Rule 68 Offer, at almost twice the monetary amount. In addition, both the July 2016 settlement and the earlier Rule 68 Offer were undisputedly exclusive of attorney fees and costs, and the parties expected in both instances that Plaintiff would be permitted to petition the Court for such an award.

Accordingly, the Court finds that the July 2016 settlement of $4,500.00 was not less favorable than the earlier Rule 68 Offer of $2,501.00, and that the Rule 68 Offer does not preclude an award of costs and attorney's fees incurred after the Rule 68 Offer. Thus, the Court will not reduce the lodestar amount on these grounds.

Similarly unavailing is Defendants' argument that the Court should reduce the lodestar amount because Plaintiff achieved only limited success in that the settlement agreement was for $4,500, and Plaintiff originally sought damages of over $210,000. To the extent that Defendants are arguing that Plaintiff's limited success can be seen by comparing the $4,500 settlement amount to the $210,000 originally sought, the Court finds that argument unpersuasive. As Defendants admit, the $210,000 to which they refer was the total amount originally sought by Plaintiff for all 84 alleged DPPA violations. In contrast, in the other portions of their argument on attorney's fees, Defendants urge this Court to remember and consider the violations individually, not as a whole. However, the Eighth Circuit has recognized the longstanding principle that "the law favors settlement agreements" and to do as Defendants ask would discourage parties from settling individual claims in multi-defendant, multi-claim lawsuits for fear of an inability to recover attorney's fees due to the size of the individual settlement in comparison to the relief originally sought on all claims combined. See, Lidell v. Bd. of Educ. of City of St. Louis, 126 F.3d 1049, 1056, n.9 (8th Cir. 1997) ("The general principle that the law favors settlement agreements has been recognized for over 100 years.").

The cases Defendants cite in support of their proportionality reduction, (Def. Mem. in Opp., [Docket No. 164], 8-10), are inapposite because they did not deal with multi-claim, multi-defendant lawsuits in which a court, prior to final resolution of all claims in the case, was determining attorney's fees for work done on a reduced number of individually settled claims. See, Galloway v. The Kansas City Landsmen, LLC, et al., 833 F.3d 969 (8th Cir. 2016) (deciding attorney's fees after a class settlement in a case under the Fair and Accurate Credit Transactions Act brought by a class of plaintiffs against 21 rental car businesses and determining success based in part on the rate of redemption of the certificates issued to class members in

settlement); Ela v. Destefano, et al., No. 6:13-cv-491-Olr-28KRS, 2015 WL 7839723, *6-7 (D. M.D.Fla. Dec. 2, 2015) (awarding attorney's fees in a case based on DPPA violations by two defendants based on illegal accesses by only one defendant); Andrews v. United States, et al., 122 F.3d 1367 (11th Cir. 1997) (reviewing attorney's fees award to plaintiffs/appellees/cross-appellants who had sued multiple defendants under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 and determining the amount of plaintiffs' success after resolution of all claims in the case). The distinguishable procedural posture of the Motion for Attorney's Fees presently before this Court requires the Court to consider the success of the individual claims settled without respect to all of the other claims against other parties that were either dismissed, separately settled themselves, or are still ongoing.

In addition, earlier in the case now before the Court, Defendants filed a motion to Dismiss or Sever, in support of which they argued that the Court should sever Plaintiff's claim against Waite Park from her claims against other defendants. (Defendant Cities' Mem. in Support of Motion to Dismiss and in the Alternative, Sever, [Docket No. 27], 3-4, n.1 (joining Minneapolis' Memorandum, [Docket No. 10])). Yet, Defendants now ask the Court to compare this settlement against the relief sought for all alleged violations as against all other Defendants. Defendants may not have it both ways. In any event, such an approach would be inherently illogical, as the request for attorney fees currently before this Court resulted from a partial settlement of this case. Additional claims against other Defendants have yet to be resolved, so, even if the Court was inclined to accept Defendant's proposal, the Court could not realistically measure Plaintiff's success on her claims as against other as yet unresolved claims for purposes of determining Plaintiff's overall success in the case as a whole.

The Court also notes that the United States Supreme Court has rejected "'a mathematical approach comparing the total number of issues in the case with those actually prevailed upon'" because "[s]uch a ratio provides little aid in light of all the relevant factors." <u>Hensley</u>, 461 U.S. at 435, n.11. The Eighth Circuit has also clearly stated: "[W]e have followed the Supreme Court and rejected calculating fee awards based simply upon the number of claims upon which the plaintiff prevailed." <u>Phelps-Roper v. Koster</u>, 815 F.3d 393, 398 (8th Cir. 2016).

Finally, in determining the number of reasonable hours to include when calculating the lodestar amount, this Court already has ensured that Plaintiff may recover from Defendants Waite Park and Collins only fees incurred on work done in furtherance of her claims against them. As the United States Supreme Court recognized in <u>Hensley</u>, many of the factors which may induce a court to increase or decrease a lodestar amount "usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." 461 U.S. at 434 n.9. Such is the case here. After the reductions by the Court, the attorney's fees to be awarded reflect only work attributable to Plaintiff's case against Defendants Waite Park and Collins. Plaintiff was successful on that claim and any appropriate proportional reduction to account for other claims in the lawsuit has been satisfied by the Court's apportionment calculations in regards to work done on the case as a whole. Accordingly, the Court determines that a further reduction of the lodestar amount based upon a finding of limited or partial success based on a comparison of the present claims with the case as a whole is not necessary.

After careful consideration of the Plaintiff's Motion for Attorney's Fees and the parties' related arguments, as well as a close review of the record, the Court determines that Plaintiff should receive an award of attorney's fees in the amount of $15,912.44.

### C. Costs

In addition to reasonable attorney's fees, the DPPA also allows recovery of "other litigation costs reasonably incurred." 18 U.S.C. § 2724(b)(3). In the case presently before the Court, Plaintiff requests costs in the amount of $3,774.89, consisting of: $28.57 toward the filing fee; $311.22 and $588.40 toward the costs of deposition transcripts; $1,830.85 for the costs incurred for work done by Plaintiff's expert, Mark Lanterman, at Computer Forensic Services; $846.79 toward costs for a deposition of Defendant's expert Jeff Gottstein; and $87.98 and $81.08 for mileage attributed to travel to take depositions. (Miller-Van Oort Aff., [Docket No. 147], 7; Invoice, [Docket No. 147-1], 5).

### 1. Filing Fee

Defendants argue for recalculation of the filing fee, arguing as they did with respect to attorney fees that this cost should be allocated according to the number of accesses, not the groups of defendants. (Def. Mem. in Opp., [Docket No. 164], 14, 20). Although, as explained above, the Court agrees with Defendants that attorney's fees for general work are more reasonably apportioned by access, the Court must disagree with Defendants' argument as applied to the filing fee. The filing fee is more reasonably divided based upon the number of defendant groups because the amount of the filing fee, unlike the complexity of the case, does not fluctuate in accordance with the number of accesses at issue in the case.

Accordingly, the Court rejects Defendants' request and approves of Plaintiff's proposal that she be allowed to recover 1/14 of the filing fee from Waite Park, as there were 14 named defendants at the time Plaintiff filed her Complaint. (See Miller-Van Oort Aff., [Docket No. 147], 2-3, 7).

### 2. Expert Witnesses

Defendants also challenge Plaintiff's request for $1,830.85 in costs and fees associated with Plaintiff's expert witness, Mark Lanterman, and $846.79 in costs and fees associated with the deposition of Defendant's expert, Jeffrey Gottstein.[9] (Def. Mem. in Opp., [Docket No. 164], 18-19; Miller-Van Oort Aff., [Docket No. 147], 7). Defendants argue that because the DPPA does not explicitly permit recovery of expert costs, the Court should not award any. (Id.). Plaintiff replies that the Court may award the expert witness costs because they are the kind of costs attorneys normally charge to clients. (Plf. Reply Mem., [Docket No. 170], 19).

Due to the lack of case law within the Eighth Circuit on the relatively new issue of awarding costs and fees under the DPPA, neither party cites a directly controlling case. (Def. Mem. in Opp. [Docket No. 164], 18-19; Plf. Reply Mem., [Docket No. 170], 19-20). Defendants therefore point this Court toward Menghi v. Hart, 745 F. Supp. 2d 89, 114 (D. E.D. N.Y. 2010), in which a defendant county in a DPPA case similarly argued that costs for expert witnesses were not recoverable by Plaintiff because the DPPA does not explicitly authorize them. (Def. Mem. in Opp., [Docket No. 164], 18).

In Menghi, the Eastern District of New York rejected a request for recovery of expert witness fees, noting:

> Although the plaintiff cites cases in which expert witness fees are awarded as a cost, those cases make the award without discussion. The Supreme Court has directed that "absent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920." Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445 (1987). Plaintiff has not provided any legal authority to address the principle that if Congress intended to allow recovery of expert witness fees, it should have explicitly provided for that recovery in the

---

[9] In their Memorandum, Defendants noted that Plaintiff did not initially submit an invoice or otherwise account for the costs she attributes to Goldstein's deposition. (Def. Mem. in Opp., [Docket No. 164], 19-20). Plaintiff acknowledges this failure, but submitted an invoice to the Court prior to the Motions Hearing. (Plf. Exh. G, [Docket No. 174], 1). Although Defendants did not specifically address the Goldstein fees at the Motions Hearing, Defendants' counsel generally asked the Court not to award "any expert fees." (October 11, 2016, Motions Hearing, Digital Record, 2:37-39). Therefore, the Court will consider the propriety of the expert fees Plaintiff requests in conjunction with Goldstein.

statute. Accordingly, plaintiff's motion for discretionary costs is denied as to full recovery of the expert witness costs, and granted as to the remaining costs.

745 F. Supp. 2d at 114-15.

Defendants argue that this Court should follow <u>Menghi</u> and <u>Crawford</u> and exclude Plaintiff's expert witness costs from any award. <u>Crawford</u> directly addressed "the power of federal courts to require a losing party to pay the compensation of the winner's expert witnesses." 482 U.S. at 438. The United States Supreme Court affirmed the Fifth Circuit's holding in the two underlying cases that federal courts could not exceed the $30-per-day limit on recovery of witness fees. <u>Id.</u> at 439.

In doing so, the <u>Crawford</u> Court traced the history of the costs awarded in the United States and noted that "28 U.S.C. § 1920 now embodies Congress' considered choice as to the kinds of expenses that a federal court may tax as costs against the losing party." <u>Id.</u> at 440. Section 1920 allows recovery of "[f]ees and disbursements for printing and witnesses." <u>Id.</u> This recoverable witness fee is further defined in 28 U.S.C. § 1821, which states that "[e]xcept as otherwise provided by law," witnesses may receive an attendance fee of $40 per day, travel reimbursement and expenses, and a subsistence allowance.

<u>Crawford</u> rejected the argument Plaintiff makes here:  that "§ 1920 does not preclude taxation of costs above and beyond the items listed, and more particularly, amounts in excess of the § 1821(b) fee." <u>See</u> 482 U.S. at 441. (<u>See</u> Plf. Reply Mem., [Docket No. 170], 19). In response to the argument that "the discretion granted by [Federal Rule of Civil Procedure] Rule 54(d) is a separate source of power to tax as costs expenses not enumerated in § 1920," the <u>Crawford</u> Court held:  "[N]o reasonable reading of these provisions"—Rule 54(d), § 1821, and § 1920—"together can lead to this conclusion, for petitioners' view renders § 1920 superfluous. If Rule 54(d) grants courts discretion to tax whatever costs may seem appropriate, then § 1920,

which enumerates the costs that may be taxed, serves no role whatsoever." 482 U.S. at 441. The Court concluded:  "We think the better view is that § 1920 defines the term 'costs' as used in Rule 54(d). Section 1920 enumerates expenses that a federal court may tax as costs under the discretionary authority found in Rule 54(d)." Id. at 441-42.

Nevertheless, Plaintiff argues that the Eighth Circuit's post-Crawford holding in Pinkham v. Camex, Inc., 84 F.3d 292, 295 (8th Cir. 1996), allows the recovery of expert witness fees. (Plf. Reply Mem., [Docket No. 170], 19).

In Pinkham, the Eighth Circuit reviewed the award of attorney's fees and costs under 17 U.S.C. § 505, which is the costs and attorney's fees recovery statute for copyright infringement actions. 84 F.3d at 295. Section 505 authorizes a federal court to "allow the recovery of full costs" and award reasonable attorney's fees to the prevailing party. See, 17 U.S.C. § 505. First, the court addressed the defendant's argument that the district court erred by awarding costs for long distance, fax, messenger services, and express mail; the court agreed that these were not recoverable under 28 U.S.C. § 1920. Pinkham, 84 F.3d at 294. The court continued:  "We believe that their inclusion was harmless error, however, because such costs were reasonable out-of-pocket expenses of the kind normally charged to clients by attorneys, and thus should have been included as part of the reasonable attorney's fees awarded." Id. at 294-95.

Plaintiff contends that because the expert witness compensation she includes in her request for costs "are costs normally charged to clients," Pinkham allows their recovery. (Plf. Reply Mem., [Docket No. 170], 19). But the Pinkham court addressed expert witness fees and allowances in a separate and distinct portion of its analysis. In that section, the Pinkham court acknowledged the holding in Crawford, but disagreed with the plaintiff's argument that the phrase "full costs" in § 505 was sufficient to satisfy the language in 28 U.S.C. §1821 that applies

40

the $40-per-day witness fee restriction "[e]xcept as otherwise provided by law." Pinkham, 84 F.3d at 295.

Thus, Pinkham ultimately concluded that "costs under 17 U.S.C. § 505 are limited to the costs expressly identified in 28 U.S.C. § 1920, and that expert witness fees in excess of the 28 U.S.C. § 1821(b) $40 limit are not recoverable." Id. at 295. Pinkham, when read in its entirety, does not support Plaintiff's argument, nor has Plaintiff provided any other authority for her proposition that her expert witness costs are recoverable.

Crawford clearly held "that absent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920." 482 U.S. at 445. The DPPA states that a court may award "reasonable attorneys' fees and other litigation costs reasonably incurred." 18 U.S.C. § 2724(b)(3). This provision contains no explicit statutory authorization for taxing expert witness expenses as costs.

Moreover, similar language in other statutes has been found to exclude recovery of expert witness fees. For example, in claims brought under the Freedom of Information Act ("FOIA"), "[t]he court may assess against the United States *reasonable attorney fees and other litigation costs* reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i) (emphasis added). The phrase "reasonable attorney fees and other litigation costs" is identical to the parallel phrase in the relevant DPPA provision. Although not interpreted by the Eighth Circuit, other courts have held that this language in FOIA does not constitute the explicit authorization needed to allow recovery of expert witness expenses beyond the per diem expert witness fee authorized by 18 § U.S.C. § 1821. See, e.g., Ray v. United States Dept. of Justice, Immigration and Naturalization Serv., 856

41

F. Supp. 1576, 1584-85 (D. S.D. Fla. 1994), aff'd on other grounds 87 F.3d 1250 (11th Cir. 1996); Nw. Coal. for Alts. to Pesticides v. Browner, 965 F. Supp. 59, 66 (D. D.C. 1997).

Other fee-shifting statutes, in contrast, contain language that does explicitly allow for the recovery of expenses associated with expert witnesses and expert consultants. For example, the Clean Water Act states: "The court, in issuing any final order in an action brought pursuant to this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate." 33 U.S.C. § 1365(d). The National Historic Preservation Act similarly allows:

> In any civil action brought in any United States district court by any interested person to enforce this division, if the person substantially prevails in the action, the court may award attorney's fees, expert witness fees, and other costs of participating in the civil action, as the court considers reasonable.

54 U.S.C. § 307105. Likewise, the Equal Access to Justice Act provides in certain factual circumstances that "the court shall award to the party the fees and other expenses related to defending against the excessive demand." 28 U.S.C. § 2412(d)(1)(D). The statute goes on to explicitly define "fees and other expenses" as including "the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees." 28 U.S.C. 2412(d)(2)(A).

These statutes make clear that when Congress wishes to authorize the recovery of the costs and expenses associated with compensating experts, it knows how to do so. In contrast, the DPPA contains no such explicit authorization. This strongly suggests that Congress did not intend to allow recovery of such fees under the fee-shifting provision of the DPPA. See gen., Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 106 (1987) ("It would appear that Congress knows how to authorize nationwide service of process when it wants to provide for

it. That Congress failed to do so here argues forcefully that such authorization was not its intention."). Thus, the Court concludes that Plaintiff may not recover the $2,677.64 in requested costs associated with expert witnesses or consultants. Subtracting those costs from Plaintiff's request, the Court finds that Plaintiff should be awarded costs in the amount of $1,097.25.

## III.   CONCLUSION

As explained above, the Court recommends that Plaintiff be awarded attorney's fees in the amount of $15,912.44 and costs in the amount of $1,097.25, for a total of $17,009.69.

A. Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion for Attorney's Fees, [Docket No. 143], be **GRANTED IN PART AND DENIED IN PART.**

Dated: November 30, 2016                         s/Leo I. Brisbois
                                                 The Honorable Leo I. Brisbois
                                                 United States Magistrate Judge

### N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]"  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and

Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.