## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| MISTY KAY MYERS | Civil No. 14-473 (JRT/LIB) |
| Plaintiff, | |
| v. | |
| AITKIN COUNTY, CITY OF BAXTER, CASS COUNTY, CITY OF CHASKA, CITY OF CROSBY, CROW WING COUNTY, MCLEOD COUNTY, MILLE LACS COUNTY, CITY OF NISSWA, CITY OF PEQUOT LAKES, CITY OF WAITE PARK, JOHN DOES (1-100), DEPARTMENT OF PUBLIC SAFETY DOES (1-30), ENTITY DOES (1-100), JANE DOES (1-100), CENTRAL MINNESOTA COMMUNITY CORRECTIONS, CHUCK EVERSON, JENNIFER TWOMBLY, SHANNON WUSSOW, SCOTT HEIDE, KARRI TURCOTTE, JESSICA TURNER, KELLI GOTVALD, GENE HILL, MELISSA SATERBAK, and JONATHAN COLLINS, | **MEMORANDUM OPINION AND ORDER ON CROSS SUMMARY JUDGMENT MOTIONS** |
| Defendants. | |

Sonia L. Miller-Van Oort and Robin M. Wolpert, **SAPIENTIA LAW GROUP PLLC**, 120 South Sixth Street, Suite 100, Minneapolis, MN 55402, for plaintiff Misty Kay Myers.

Margaret A. Skelton and Timothy A. Sullivan, **RATWIK, ROSZAK & MALONEY, PA**, 730 Second Avenue South, Suite 300, Minneapolis, MN 55402 for defendants Aitkin County, Central Minnesota Community Corrections, Crow Wing County, Mille Lacs County, Jennifer Twombly, Chuck Everson, Shannon Wussow, Scott Heide, Karri Turcotte, Jessica Turner, and Melissa Saterbak.

Jason M. Hill, **JARDINE, LOGAN & O'BRIEN, PLLP**, 8519 Eagle Point Boulevard, Suite 100, Lake Elmo, MN  55402, for defendant Kelli Gotvald.

Plaintiff Misty Kay Myers commenced this action in February 2014 against numerous Minnesota counties, entities, and unnamed individuals, alleging that Minnesota law enforcement officers and related persons impermissibly accessed her private information from the state's motor vehicle records in violation of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2724.  Myers amended her complaint in 2015 to replace certain unnamed defendants with named individuals, including some of the defendants who have now moved for summary judgment.  At this stage in the proceedings, both Myers and certain defendants filed motions for summary judgment.

In their summary judgment motions, defendants Aitkin County, Central Minnesota Community Corrections ("CMCC"), Crow Wing County, Mille Lacs County, Jennifer Twombly, Chuck Everson, Shannon Wussow, Scott Heide, Karri Turcotte, Jessica Turner, Melissa Saterbak, and Kelli Gotvald (altogether, the "Defendants") assert that: the statute of limitations bars nearly all of Myers's claims; the Individual Defendants' accesses were permissible or alternatively qualified immunity applies; the Entity County Defendants are neither directly nor vicariously liable; Myers lacks standing to bring an action under the DPPA; and Myers's punitive damages claim fails for lack of willful or reckless disregard of the law.[1]  Myers's motion for partial summary judgment requests

---

[1] Gotvald filed a summary judgment motion separately from the remaining Defendants, where – except for the direct and vicarious liability argument – Gotvald raised all of the same legal arguments that the Defendants addressed in their briefing.  Because their arguments coincide, the Court will combine and address the arguments singularly in this Order.  To the extent the arguments diverge, the Court will note such discrepancies and identify: (1) Aitkin County, CMCC, Crow Wing County, Mille Lacs County as the "Entity County Defendants," (2) Twombly, Everson, Wussow, Heide, Turcotte, Turner, and Saterbak as the "Individual

(Footnote continued on next page.)

that the court determine there are 20 accesses at issue related to Defendants' conduct, and that each violation subjects Defendants to a minimum liquidated damage amount of $2,500.

Because the Court determines that Turcotte accessed Myers's information for a permissible purpose and that Myers's amended complaint fails to relate back to her original complaint, the Court will grant summary judgment for all of the Individual Defendants except for Wussow regarding her access of Myers's information on May 1, 2012. As a genuine issue of material fact remains regarding the permissibility of Wussow's access, the Court will deny Wussow's motion for summary judgment on the DPPA violation and for qualified immunity. Because there are material factual disputes regarding the permissibility of the Individual Defendants' accesses and the Court finds vicarious liability compatible with DPPA claims, the Court will deny the Defendants' summary judgment motion on vicarious liability and punitive damages grounds. As Myers provided evidence that she suffered a real, concrete, and actual injury, the Court will reject Defendants' standing argument. Finally, because liquidated damages and the number of accesses at issue are inappropriate matters for the Court to determine at this stage of the proceedings, the Court will deny Myers's motion for partial summary judgment.

---

(Footnote continued.)

County Defendants" (together, the "County Defendants"), and (3) the Individual County Defendants and Gotvald collectively as the "Individual Defendants."

## BACKGROUND

### I.    FACTUAL HISTORY

Between November 2007 to October 2012, Myers, an attorney, handled a variety of cases in Aitkin County, Crow Wing County, and Mille Lacs County.   (Aff. of Margaret A. Skelton ("Skelton Aff."), Ex. 1 ("Myers Dep.") at 13:23-24, 14:3-7, 33:8-20, 33:25-34:22, 36:5-13, 124:9-15, Aug. 1, 2016, Docket No. 136.)   Myers married City of Brainerd law enforcement officer Ron Myers in August 2011, but the couple divorced in March 2016.   (*Id.* at 18:15-19, 19:22-20:3.)

In May 2013, Myers requested an audit from the Minnesota Department of Public Safety ("DPS").   (*Id.* at 50:24-51:2.)   She received the first audit around July 2013, which identified Minnesota entities – but not the names of individuals – who accessed her data. (*See* Second Aff. of Robin M. Wolpert ("Second Wolpert Aff."), Ex. 6, Aug. 23, 2016, Docket No. 162.)   Myers felt stressed, betrayed, and scared when she learned law enforcement accessed her private information.   (Myers Dep. at 29:12-30:10.)   In July 2015, Myers reviewed a second audit identifying the individuals who accessed her data. (*Id.* at 66:2-19.)   Myers recognized some of the individual accessors, (*id.* at 67:15-68:8), and overall felt "[s]ick" after reviewing the list, (*id.* at 72:25-73:7).   Since filing this action, Myers explained her "life has changed," in that she stopped seeing some of her and Ron Myers's friends.   (*Id.* at 76:14-24.)

## II. THE DVS ACCESSES OF MYERS'S INFORMATION

The parties dispute whether the following Individual Defendants' accesses on the Driver and Vehicle Services ("DVS") database of Myers's information were pursuant to a permissible government use.

### A. Aitkin County Accesses

According to the DVS audit, Everson, an Aitkin County deputy sheriff, accessed Myers's information on April 7, 2010, at 10:48 a.m., and Twombly, an Aitkin County dispatcher, accessed Myers's information on March 24, 2011, at 10:00 p.m.[2] (First Aff. of Robin M. Wolpert ("First Wolpert Aff."), Ex. 46 ("DVS Audit") at 2, 3, Aug. 23, 2016, Docket No. 161; Skelton Aff., Ex. 14 ("Everson Dep.") at 18:2-4; Skelton Aff., Ex. 19 ("Twombly Dep.") at 4:15-20.) Neither Everson nor Twombly recalled accessing Myers's data. (Everson Dep. at 37:21-25; Twombly Dep. at 31:21-32:2.)

However, Everson explained that on the date of his access, Myers attended a hearing involving an individual who Everson "paid extra attention to" because the individual had "acted out in court before." (Everson Dep. at 34:16-21, 35:10-13, 36:2-5.) Everson suggested he accessed Myers's information out of "[c]oncern for her safety." (*Id.* at 36:16-19.) But, Everson admitted he did not access information of other attorneys involved in that hearing (*id.* at 36:13-15), and he admitted that he knew Myers, he had two mutual friends who talked about Myers, and he also knew her ex-husband, Ron Myers, (*id.* at 67:2-7, 69:21-71:8; 71:18-21).

---

[2] Although the DVS Audit appears to list several accesses for the Individual Defendants, the Court will only address the accesses that Myers specifically discussed in her briefs.

Twombly contends that she may have inadvertently accessed Myers's information when Aitkin County received criminal complaints about Misty L., who has the same first name as Myers.  (*See* Skelton Aff., Ex. 5.)  Myers, however, replies that she had a meeting scheduled with Twombly's mother-in-law six hours prior to Twombly's access. (First Wolpert Aff., Ex. 49 at 17; Second Wolpert Aff., Ex. 15 at 44:12-45:4.)

## B.    Crow Wing County Accesses

The DVS audit also shows that: Turner, a Crow Wing County dispatcher, accessed Myers's information on February 20, 2010, at 3:05 a.m.; Heide, a Crow Wing County public safety answering point supervisor, accessed Myers's information on May 12, 2011, at 8:47 a.m.; and Turcotte, a Crow Wing County dispatcher, accessed Myers's information on May 2, 2012, at 9:27 a.m.  (DVS Audit at 1-2; Skelton Aff., Ex. 23 ("Turner Dep.") at 12:3-4; Skelton Aff., Ex. 22 ("Heide Dep.") at 6:1-4; Second Wolpert Aff., Ex. 33 at 2.)

Neither Turner nor Heide recalled why they accessed Myers's information. (Turner Dep. at 52:18-23; Heide Dep. at 85:11-19.)  Defendants assert, without any citation to the record, "Crow Wing County's Master Name Index demonstrates 52 separate entries documenting interactions with individuals named Misty," and that Turner and Heide may have inadvertently accessed Myers pursuant to a law enforcement purpose.  (County Defs.' Mem. in Supp. of Mot. for Summ. J. at 36, Aug 1. 2016, Docket No. 135.)  Myers counters Turner was Ron Myers's friend and Turner likely accessed Myers's information upon learning Myers and Ron Myers were engaged.  (*See* Turner

Dep. at 44:19-20, 45:22-23, 52:8- 53:6.)  Myers also counters Heide admitted Ron Myers was his former neighbor and that he had met Myers.  (Heide Dep. at 79:10-23.)

Turcotte asserts she accessed Myers's driver's license information in response to a request from a Brainerd police officer, Ron Myers.  (Skelton Aff., Ex. 15 at 2.)  After Turcotte relayed the information, Ron Myers – Myers's ex-husband – told Turcotte he was using that information to purchase Myers a fishing license.  (*Id.*; *see also* Skelton Aff., Ex. 24.)  Myers nonetheless contends that Turcotte impermissibly released her private information for a fishing license without any law enforcement purpose.

### C.     CMCC Accesses

Wussow, a CMCC probation agent who worked in Crow Wing County, accessed Myers's information on April 26, 2011, and on May 1, 2012.  (DVS Audit at 21; Second Wolpert Aff., Ex. 20 ("Wussow Dep.") at 4:15-18.)  Wussow did not recall why she accessed Myers's information.  (Wussow Dep. at 37:1-4.)  The parties do not dispute that Wussow knew that Myers was a former city prosecutor.  (*See* County Defs.' Mem. in Supp. of Mot. for Summ. J. at 37; Pl.'s Mem. in Opp'n to County Defs.' Mot. for Summ. J. at 18, Aug. 23, 2016, Docket No. 159.)  Wussow, however, suggests that she may have inadvertently accessed Myers's information because she was working on Misty L.'s probation file around the time.  (*See* Skelton Aff., Ex. 11.)  Myers counters that Wussow admitted within 48 hours of accessing Myers's information on April 26, 2011, Wussow accessed the information of many other old friends and colleagues on the DVS database.  (*See* DVS Audit at 18-19; Wussow Dep. at 60:21-64:13.)

### D.     Mille Lacs County Accesses

Saterbak, an assistant Mille Lacs County attorney, accessed Myers's information multiple times on various dates during the summer of 2010, (*see* DVS Audit at 15, 18; Second Wolpert Aff., Ex. 38 ("Saterbak Dep.") at 19:1-3)[3], and Gotvald, a legal assistant at the Mille Lacs County Attorney's Office, accessed Myers's information on September 30, 2010 at 3:30 p.m., (*see* DVS Audit at 13; Second Wolpert Aff., Ex. 36 ("Gotvald Dep.") at 21:9-14).  Saterbak asserts the accesses attributed to her could have been a different attorney in the office with whom she shared her DVS credentials, (Saterbak Dep. at 64:20-65:24; 85:3-6), and Gotvald did not recall accessing Myers's information, (Gotvald Dep. at 75:8-10).  Saterbak and Gotvald also suggest that the purpose of the accesses may have been to identify Myers in Mille Lacs County court or to verify Myers's address for service of process.  (*See* County Defs.' Mem. in Supp. of Mot. for Summ. J. at 38-39.)  Myers counters that the DVS audit indicates Saterbak also accessed another attorney who she knows, (Saterbak Dep. at 118:12-119:16), and that Gotvald admitted she used the database to access an old friend's information, (Gotvald Dep. at 84:13-85:3).

## III.   DAMAGES

As a result of learning about the accesses, Myers experienced migraines, heart palpitations, and had irregular periods.  (Myers Dep. at 161:20-23, 164:16-165:5, 172:1-

---

[3] Specifically, Myers points to Saterbak's accesses on: August 4, 2010, at 3:35 p.m.; August 18, 2010, at 12:44 p.m.; August 19, 2010, at 9:53 a.m.; August 24, 2010, at 2:39 p.m.; September 10, 2010, at 11:18 a.m.; and October 8, 2010, at 11:34 a.m.  (*See* DVS Audit at 15, 18; Pl.'s Mem. in Supp. of Partial Summ. J. at 14, Aug 1, 2016, Docket No. 140.)

5; First Wolpert Aff., Ex. 48 at 7-9.)   Myers saw a physician who prescribed her medications to treat the migraines.  (First Wolpert Aff., Ex. 48 at 7-8; *id.*, Ex. 47 at MYERS000190.)  Overall, Myers alleges that she suffered emotional distress, felt scared, and endured stress as a result of the accesses.  (Myers Dep. at 173:10-19.)

## IV.    PROCEDURAL BACKGROUND

On February 20, 2014, Myers commenced this action against six Minnesota counties, seven Minnesota cities, two DPS Commissioners, thirty unnamed Minnesota entities, and over one-hundred unidentified individuals.[4]  (Compl., Feb. 20, 2014, Docket No 1.)  Myers alleged those defendants illegally accessed her private driver's license information eighty-four times, in violation of the DPPA, her Fourth and Fourteenth Amendment rights, and her Minnesota common law privacy rights.  (*Id.* at 18, 39, 42-43, 51-52.)  On December 29, 2014, the Court issued an order deciding several dispositive motions and dismissing Myers's DPPA claims arising prior to February 20, 2010, pursuant to the statute of limitations, as well as her constitutional and privacy claims.[5]

---

[4] Those defendants were: Aitkin County, City of Baxter, Cass County, City of Chaska, Cook County, City of Crosby, Crow Wing County, McLeod County, Mille Lacs County, City of Minneapolis, City of Nisswa, City of Pequot Lakes, City of Waite Park, Michael Campion, Ramona Dohman, John Does (1-100), Department of Public Safety Does (1-30), Entity Does (1-30), and Jane Does (1-100).  (*See* Compl., Feb. 20, 2014, Docket No 1.)

[5] The Court's decision resulted in the dismissal of Myers's claims against: City of Baxter, Cass County, City of Chaska, City of Crosby, McLeod County, City of Minneapolis, City of Nisswa, City of Pequot Lakes, Ramona Dohman, and Michael Campion.  (*See* Mem. Op. & Order on Defs.' Mots. to Dismiss at 49-50, Dec. 29, 2014, Docket No. 50; Am. Compl. ¶¶ 13, 19, 23, 26-31, 50-51, Oct. 9, 2015, Docket No. 68.)

(*See* Mem. Op. & Order on Defs.' Mots. to Dismiss at 49-50, Dec. 29, 2014, Docket No. 50.)

On October 9, 2015, Myers filed her amended complaint, in which she replaced unnamed individuals with named individuals – including the Individual Defendants – and replaced unnamed entities with named entities – including CMCC.[6]  (Am. Compl. ¶¶ 20, 25, 35-46, Oct. 9, 2015, Docket No. 68.)  On August 1, 2016, Myers and the Defendants filed cross motions for summary judgment.  (Gotvald's Mot. for Summ. J., Aug. 1, 2016, Docket No. 128; County Defs.' Mot. for Summ. J., Aug. 1, 2016, Docket No. 133; Myers's Mot. for Partial Summ. J., Aug. 1, 2016, Docket No. 138.)

## DISCUSSION

## I.    STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the lawsuit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable

---

[6] Myers also added claims against Morrison County, Darcy Ziller, and Jolene Pasch. (Am. Compl. ¶¶ 20, 25, 38, 45, 46.)  However, Myers later settled her claims against Cook County – a preexisting defendant – and Ziller, (J., Mar. 18, 2016, Docket No. 96), as well as Morrison County and Pasch, (Am. J., Mar. 18, 2016, Docket No. 98).

inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "To defeat a motion for summary judgment, a party may not rest upon allegations, but must produce probative evidence sufficient to demonstrate a genuine issue [of material fact] for trial." *Davenport v. Univ. of Ark. Bd. of Trs.*, 553 F.3d 1110, 1113 (8th Cir. 2009). If one party's version of events "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## II.    STATUTE OF LIMITATIONS

The Individual Defendants contend that the applicable statute of limitations bars nearly all of Myers's DPPA claims against them. A plaintiff must bring a DPPA claim within four years of the impermissible access. *McDonough v. Anoka Cty.*, 799 F.3d 931, 943 (8th Cir. 2015). On October 9, 2015, Myers filed her amended complaint, in which she replaced unnamed individuals in her original complaint, filed on February 20, 2013, with the Individual Defendants. Each of the Individual Defendants' accesses at issue – other than Wussow's and Turcotte's access – occurred more than four years prior to when Myers filed her amended complaint. If, however, Myers's amended complaint relates back to her original complaint filed on February 20, 2013, then all of the accesses at issue are not barred by the statute of limitations.

The Federal Rules of Civil Procedure provides that an amended complaint relates back to the date of an original complaint if there was "a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii). Thus, whether Myers's amended complaint relates back to her original complaint turns on whether the substitution of a "Doe" defendant for a named defendant is "a mistake concerning the proper party's identity."

In interpreting what constitutes a mistake under Rule 15(c)(1)(C)(ii), the Supreme Court in *Krupski v. Costa Crociere S. p. A.*, stated:

> A mistake is "[a]n error, misconception, or misunderstanding; an erroneous belief." Black's Law Dictionary 1092 (9th ed. 2009); *see also* Webster's Third New International Dictionary 1446 (2002) (defining "mistake" as "a misunderstanding of the meaning or implication of something"; "a wrong action or statement proceeding from faulty judgment, inadequate knowledge, or inattention"; "an erroneous belief"; or "a state of mind not in accordance with the facts").

560 U.S. 538, 548-49 (2010). The parties dispute the application of this definition to the instant action. While Defendants assert that Myers's use of a Doe defendant does not constitute an "error, misconception, or misunderstanding," Myers counters that she had "inadequate knowledge." *Id.* Although the Eighth Circuit has not decided this issue, an overwhelming majority of circuits hold that a plaintiff's lack of knowledge regarding the identity of a Doe defendant is not a "mistake" that justifies relating the amendment back to the original complaint under Rule 15(c)(1)(C)(ii). *See Locklear v. Bergman & Beving AB*, 457 F.3d 363, 368 (4th Cir. 2006) ("We therefore reaffirm that [Rule 15(c)(1)(C)(ii)] is not satisfied when the claimed mistake consists of a lack of knowledge of the proper party to be sued."); *Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004) ("[A]

plaintiff's lack of knowledge of the intended defendant's identity is not a 'mistake' concerning the identity of the proper party' within the meaning of Rule 15(c)[(1)(C)(ii)]."); *Jacobsen v. Osborne*, 133 F.3d 315, 321 (5th Cir. 1998) ("[F]or a 'John Doe' defendant, there was no 'mistake' in identifying the correct defendant; rather, the problem was not being able to identify that defendant."); *Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) (stating that "new parties may not be added after the statute of limitations has run, and that such amendments do not satisfy the 'mistaken identity' requirement of Rule 15(c)[(1)(C)(ii)]"); *Worthington v. Wilson*, 8 F.3d 1253, 1256 (7th Cir. 1993) (stating Rule 15(c) "does not permit relation back where, as here, there is a lack of knowledge of the proper party" (quoting *Wood v. Worachek*, 618 F.2d 1225, 1230 (7th Cir. 1980)).

Several cases in this district have applied the majority view. *See Heglund v. Aitkin Cty.*, No. 14-296, 2016 WL 3093381, at *4-5 (D. Minn. June 1, 2015) (holding same); *Potocnik v. Carlson*, No. 13-2093, 2016 WL 3919950, at *3-4 (D. Minn. July 15, 2016) (same). In the instant action, Myers named several Doe defendants because she did not know who had unlawfully accessed her DVS information – this was not a "mistake" or error, but rather Myers accurately communicated a fact. It would be a narrow and misguided reading of *Krupski* to hold that the inadequate knowledge about the identity of Doe defendants was a "mistake." Indeed, "*Krupski* adopted a definition of 'mistake' that does not fit the facts of a John Doe case . . . . [A] plaintiff who sues a John Doe defendant does not do so because of an error, misconception, misunderstanding, or erroneous belief.

Nor has she committed a 'wrong' action on account of inadequate knowledge."
*Potocnik*, 2016 WL 3919950 at *5.

Thus, as the Court finds that Myers's amended complaint does not relate back to her original complaint, the Court will dismiss Myers's claims against Twombly, Everson, Heide, Turner, Saterbak, and Gotvald as untimely.  The remaining Individual Defendants in this action are Wussow, who accessed Myers's information on May 1, 2012, and Turcotte, who accessed Myers's information on May 2, 2012.[7]

## III.   VIOLATION OF THE DPPA AND QUALIFIED IMMUNITY

### A.   Purpose for Accesses

The parties next dispute whether the Individual Defendants' accesses were made for an impermissible purpose to establish DPPA violations.  The Act lists several permitted uses for accessing state motor vehicle records, including "use by any government agency . . . in carrying out its functions."  18 U.S.C. § 2721(b)(1).  The remaining Individual Defendants – Wussow and Turcotte –  contend summary judgment must be granted pursuant to this permitted use because evidence suggests Wussow inadvertently accessed Myers's information based on Misty L.'s criminal activity, and Turcotte accessed Myers's driver's license information in response to Ron Myers's – a Brainerd police officer and Myers's ex-husband – request.  Myers counters that Wussow

---

[7] Relying upon *Schrader v. Royal Caribbean Cruise Line, Inc.*, 952 F.2d 1008, 1013-14 (8th Cir. 1991), Myers alternatively argues that the Individual Defendants should be equitably estopped from relying on the statute of limitations.  However, unlike in *Schrader*, Myers has not raised a factual question of whether the Individual Defendants actively mislead Myers from discovering their identities or prevented her from bringing timely claims.  *Id.*  As a result, there is no basis on which to estop the Individual Defendants from relying on the statute of limitations.

admitted that within 48 hours of accessing Myers's information on April 26, 2011, Wussow accessed information of her old friends and colleagues, and that Turcotte impermissibly released Myers's private information for a fishing license without any law enforcement purpose.

The Court finds that the lack of a definitive explanation for Wussow's access and the circumstantial evidence put forth by Myers precludes Wussow's motion for summary judgment. *See Mallak v. City of Baxter*, 823 F.3d 441, 446-47 (8th Cir. 2016) (denying summary judgment because key factual questions remained on whether the accesses of plaintiff's data violated the DPPA). As Wussow admittedly accessed information of other acquaintances, Wussow may have accessed Myers's information for an impermissible purpose such as curiosity, boredom, or personal interest. Thus, because the Court finds a genuine issue of material fact remains over Wussow's access, the Court will deny Wussow's motion for summary judgment on such grounds.

In contrast, however, Myers does not dispute Turcotte's testimony that Turcotte was not aware why Ron Myers, a Brainerd police officer, asked for Myers's information until after Turcotte relayed the information to him. Nothing in the record suggests that Turcotte already knew Ron Myers was married to Myers at the time of his call. Thus, as the Court finds there is no factual dispute over whether Turcotte was permissibly performing her dispatch duties by responding to a phone call from a police officer, the Court will dismiss Myers's DPPA claim against Turcotte.

## B.      Qualified Immunity

The remaining Individual Defendant – Wussow – also contends that she is entitled to qualified immunity because at the time she accessed Myers's information in 2012, it was not clearly established that inadvertently accessing someone's driver's license information in the course of performing her official duties constituted a violation of the DPPA.   However, Wussow's argument fails, as there remains a genuine and material factual dispute concerning the purpose of Wussow's access.   As the DPPA has been in place since 1994, it was clearly established by the time of Wussow's access that any impermissible access violated federal law.   *Mallak v. Aitkin Cty.*, 9 F. Supp. 3d 1046, 1063-64 (D. Minn. 2014) ("The DPPA is clear that accessing driver's license information without a permissible purpose violates the law. The DPPA has been in place since 1994."). Thus, the Court will deny Wussow's motion for summary judgment on qualified immunity grounds.

## C.      Direct or Vicarious Liability

The Entity County Defendants also move for summary judgment on the basis that (1) Myers does not have sufficient evidence to prove that the Entity County Defendants are directly liable to her, and (2) the Entity County Defendants cannot be held vicariously liable to Myers under the DPPA.

### 1.      Direct Liability

Myers argues that the Entity County Defendants are directly liable to her under the DPPA because those entities provided DVS credentials to their employees but failed to

monitor their accesses and because the Entity County Defendants had a business partner agreement with the State of Minnesota acknowledging direct responsibility for DVS usage by their employees.

"To violate the DPPA [pursuant to a direct liability theory], a defendant itself must have acted with an impermissible purpose; it is not enough that the defendant discloses information to one who subsequently uses it for an impermissible purpose." *Weitgenant v. Patten*, No. 14-255, 2016 WL 1449572, at *4 (D. Minn. Apr. 12, 2016) (collecting cases). Nothing in the record suggests that the Entity County Defendants facilitated or "knowingly" provided the Individual Defendants access to the DVS database for any reason other than to enable its officers to carry out their law-enforcement duties, which the DPPA expressly permits. *See* 18 U.S.C. § 2721(b)(1). Furthermore, the Entity County Defendants' private contract with the State of Minnesota has no bearing on whether those defendants are directly liable to Myers under the DPPA. *See Potocnik*, 2016 WL 3919950, at *6 ("The [DVS Partnership] agreement is a private contract that has nothing to do with whether or how the City can be found directly liable under a federal statute.").

Thus, although the Court finds that none of the Entity County Defendants are directly liable under the DPPA, the Court must also determine whether the Entity County Defendants are vicariously liable for the accesses by the Individual County Defendants.[8]

---

[8] Neither of the parties briefed whether the Entity County Defendants – who were timely sued – may be held vicariously liable for the alleged unlawful conduct of an Individual County Defendant, when the underlying claim against the Individual County Defendant is barred by the statute of limitations. "This is an important and complicated issue on which different

(Footnote continued on next page.)

### 2.       Vicarious Liability

In the absence of Eighth Circuit precedent on the issue, the parties dispute whether vicarious liability applies for DPPA violations.  The Entity County Defendants urge the Court to follow *Weitgenant*, 2016 WL 1449572, at *7, which held,

> Even if vicarious liability were a viable theory of recover under the DPPA in this district, . . .  [i]mposing liability here, where the violations resulted from willful employee misconduct despite proper training and where the data was not publicly disseminated, would result in [impermissibly] imposing strict liability upon a municipal entity required to provide its employees with access to the DVS database to carry out mandated government functions.

Myers, in contrast, urges the Court to follow *Potocnik*, 2016 WL 3919950, at *6 ("In American law, vicarious liability is the rule, not the exception, and the Court can discern no reason why DPPA cases should be exempt from the general rule.").

The Court agrees with *Potocnik*, that "vicarious liability is compatible with the DPPA," 2016 WL 3919950, at *7, and disagrees with *Weitgenant*, that such a holding would result in impermissibly imposing "strict liability" upon the Entity County Defendants.  On the contrary, 18 U.S.C. § 2721(b)(1) expressly permits officers to access state motor vehicle records to carry out legitimate law-enforcement duties, and courts typically give a broad reading to that provision.  *Potocnik*, 2016 WL 3919950, at *7.  However, once the Individual County Defendants exceed such broad bounds, the Entity County Defendants are best equipped to monitor, prevent, and deter impermissible

_____

(Footnote continued.)

jurisdictions have adopted different rules." *Potocnik*, 2016 WL 3919950, at *8 (citing *Byrd v. J Rayl Transp. Inc.*, 106 F. Supp. 3d 999, 1001-02 (D. Minn. 2015) (collecting cases)).  Given that the parties have not adequately briefed the issue, the Court will presume at this stage of the proceedings that all of the Entity County Defendants may be vicariously liable despite untimely claims against the Individual Defendants.

accesses, "and vicarious liability gives it an incentive to do so." *Id.* at *7.[9] Thus, the Court will deny the Entity County Defendants' motion for summary judgment on vicarious liability grounds.

### 3.   Standing

Defendants argue that under the DPPA, which provides that courts may award "actual damages, but not less than liquidated damages in the amount of $2,500," 18 U.S.C. § 2724(b)(1), there is a threshold requirement that Myers first must have suffered some actual damages in order to satisfy the "injury in fact" standing requirement for a federal case.[10] Defendants contend that Myers has not established that she has incurred actual damages or an injury in fact as a result of the accesses at issue because Myers has not been treated by a psychiatrist, a psychologist, or any other type of medical provider for any alleged injury caused by the Defendants; Myers was not diagnosed with any

---

[9] Relying upon the Restatement, the Entity County Defendants also assert vicarious liability is inapplicable because the Individual County Defendants were acting outside the scope of their employment.  Under the Restatement, an employer is subject to vicarious liability for a tort committed by its employee acting within the scope of employment, which occurs "when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control.  An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer."  Restatement (Third) of Agency § 7.07 (Am. Law Inst. 2006).  The Court is not persuaded by this argument as the Defendants did not assert that the Individual County Defendants' course of conduct was not subject to the Entity County Defendant's control.

[10] *See Almendarez-Torres v. United States*, 523 U.S. 224, 237-38 (1998) ("A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score." (quoting *United States v. Jin Fuey Moy*, 241 U.S. 394, 401 (1916))).  "Article III standing is a threshold question in every federal court case." *United States v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1013 (8th Cir. 2003).  A plaintiff has standing if, among other requirements, the plaintiff suffered an injury in fact. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  Thus, Defendants argue that the DPPA must be construed to provide relief only in cases of "actual or imminent" injury to avoid conflicting with the Article III standing requirements. *Id.* at 1548.

condition caused by the conduct of the Defendants; her identity was not stolen; and Myers did not miss work or lose any wages as a result of the accesses.

Although the Eighth Circuit has not addressed the issue, other circuit courts have determined that no actual damages must be established for a DPPA plaintiff to be awarded liquidated damages.  *See Pichler v. UNITE*, 542 F.3d 380, 397-400 (3d Cir. 2008); *Kehoe v. Fidelity Fed. Bank & Tr.*, 421 F.3d 1209, 1214-16 (11th Cir. 2005).  *But see Potocnik*, 2016 WL 3919950, at *10-12 (holding a DPPA plaintiff may not recover liquidated damages unless the plaintiff can prove actual damages).  Without determining at this stage of the proceedings whether the DPPA requires actual damages or if liquidated damages may be awarded as an alternative, the Court finds Myers adequately pleaded facts supporting actual damages.  *See Potocnik*, 2016 WL 3919950, at *13 ("In the context of the DPPA, the Court finds that 'actual damages' includes damages for mental and emotional distress.").

Furthermore, Myers satisfied the injury in fact standing requirement.  "There is no doubt that emotional distress is an injury in fact or that [a DPPA plaintiff] has standing to bring an action seeking compensation for that injury."  *Id.* at *3.  Myers provided detailed testimony that she suffered emotional distress, heart palpitations, migraines, irregular periods, and weight loss, as a result, in part, of Defendants' unlawful accesses of her private information.  Because this evidence establishes a real, concrete, and actual injury, the Court will deny Defendant's motion for summary judgment concerning standing.

### 4.      DAMAGES AND NUMBER OF ACCESSES

#### a.      Punitive Damages

Defendants assert they are entitled to summary judgment on Myers's punitive damages claim because the record is devoid of evidence indicating the Individual Defendants appreciated they were engaging in wrongful conduct when accessing Myers's information.  *See* 18 U.S.C. § 2724(b)(2) (allowing for "punitive damages upon proof of willful or reckless disregard of the law"); *Pichler*, 542 F.3d at 397 ("We cannot conceive of what willful or reckless disregard for the DPPA could be other than where a 'party appreciated it was engaging in wrongful conduct' under the DPPA.").

However, Defendants' assertion that the record is devoid of such evidence is incorrect.   On the contrary, there remains a genuine and material factual dispute regarding whether the Individual Defendants knowingly accessed Myers's information for impermissible reasons, and whether they appreciated they were engaging in wrongful conduct by doing so.   Myers provided evidence that the Entity County Defendants had policies regarding the use of confidential information and all of the Individual Defendants testified that they knew the DVS database was supposed to be used for law enforcement purposes and not out of curiosity, boredom, or personal interest.   Therefore, the Court will deny Defendants' motion for summary judgment on the punitive damages issue.

#### b.      Minimum Liquidated Damages and Number of Accesses

In Myers's motion for partial summary judgment, she asks the Court to find (1) as a matter of law, each separate violation of the DPPA subjects Defendants to a $2,500

liquidated damage amount, and (2) based on the undisputed material facts in the record, there are 20 accesses at issue related to Defendants' conduct.

The Court will deny Myers's motion in its entirety. As liability has not yet been determined, Myers's question as to how the Court will interpret the liquidated damages provision of the DPPA is premature and would result in an advisory opinion in excess of the Court's constitutional authority. *Kost v. Hunt*, 983 F. Supp. 2d 1121, 1131 (D. Minn. 2013) (declining to determine DPPA damages because the remedies provision does not provide damages is a prerequisite for stating a claim upon which relief can be granted for a DPPA violation); *Cummings v. Allstate Ins. Co.*, No. 11-2691, 2011 WL 4528366, at *9 (E.D. Penn. Sept. 30, 2011) (holding that issuing an opinion as to the "extent of damages" available to a plaintiff "would be purely speculative" and "advisory" before liability was established).

Furthermore, the Court declines to determine the number of accesses at issue. The parties dispute whether consecutive entries should count as separate accesses when a DVS user took affirmative steps to obtain different data located on different "pages" of the DVS system. Myers submits that each is a different infraction of the DPPA. Defendants assert that there are numerous factors that impact how many lines are generated on an audit, including a user's individual computing skill and efficiency, whether a user was interrupted or distracted during a query, or even the number of different tabs that are clicked on during a query to rearrange the information presented on the computer screen. Due to these factors, Defendants argue that the DVS audit report is not a reliable means of ascertaining how many accesses occurred for the purposes of a

DPPA claim.  Because the parties contest the methodology to determine whether an access occurred, the Court finds the number of accesses is a material factual question best left for the factfinder.  Thus, the Court will deny Myers's motion for summary judgment on both grounds.

This case will be placed on the Court's next available trial calendar.


## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Defendant Gotvald's Motion for Summary Judgment [Docket No. 128] is **GRANTED**; and

2.      Defendants Aitkin County, CMCC, Crow Wing County, Mille Lacs County, Twombly, Everson, Wussow, Heide, Turcotte, Turner, and Saterbak's Motion for Summary Judgment [Docket No. 133] is **GRANTED in part and DENIED in part** as follows:

   a.      To the extent the motion seeks to dismiss DPPA claims against Twombly, Everson, Heide, Turcotte, Turner, and Saterbak, the motion is **GRANTED**;

   b.      To the extent the motion seeks to dismiss DPPA claims arising from Wussow's access on April 26, 2011, the motion is **GRANTED**;

   c.      To the extent the motion seeks to dismiss DPPA claims arising from Wussow's access on May 1, 2012, the motion is **DENIED**;

   d.      In all other respects, the motion is **DENIED**.

3.      Plaintiff's Motion for Partial Summary Judgment [Docket No. 138] is

**DENIED**.


DATED:  March 27, 2017                              s/ John R. Tunheim
at Minneapolis, Minnesota.                     JOHN R. TUNHEIM
                                                   Chief Judge
                                          United States District Court